## McCartney v. Bostwick.

The enforcement of pure trusts is one of the original and inherent powers of a court of equity; and, by force of the State Constitution, this power is now vested in the Supreme Court.

The jurisdiction of the court in respect to creditors' bills, is *auxiliary* to the remedies of the creditor at law, and can only be invoked after performance of the statutory condition, that the remedies at law shall first be exhausted.

In cases of pure trust, the party ordinarily has no remedy at law, and may resort *in the first instance* to a suit in equity.

Previous to the revision of our statutes, when land was purchased in the name of one, with the money of another, save in a few exceptional cases, the law declared a resulting trust in favor of the party paying the consideration.

By the statute of uses and trusts, this rule was abolished, and an independent resulting trust was declared in favor of creditors, which may be enforced in the first instance in a court of equity, where nothing has been done or omitted by the creditors, tending to impair their rights, and where the design and effect of the transaction has been to defraud them.

THIS was a suit in equity, to enforce in favor of creditors a statutory trust, against the grantee of lands, purchased with the debtor's means, but conveyed to his wife by the vendor, and afterwards transferred by her to the respondent, with full notice of all the facts.    The question arises on demurrer to the complaint, which shows the following state of facts:

The plaintiffs, in 1856 and 1857, sold goods to the defendant, A. W. Bostwick, to the amount of about $4,000.    The plaintiffs then resided and still reside at St. Louis, Missouri. A. W. Bostwick then resided and still resides in Minnesota. On the 25th of September, 1858, the plaintiffs recovered judgment against Bostwick on the debt, in the State of Minnesota, for the sum of $4,181.68.    Execution was duly issued on this judgment, and returned *no property*, October 13, 1858.

In April, 1858, A. W. Bostwick sold his stock of goods in Minnesota to one L. C. Potter, also residing in that State; and, in consideration of that sale, Potter, owning the real estate now in question, situated in Cayuga county, in this State, conveyed it to Mollie, the wife of Bostwick.    This real estate is worth $5,000, sufficient to satisfy the debt.

On the 14th of June, 1858, A. W. Bostwick and wife conveyed the same real estate to the defendant, Samuel W. Bostwick, the father of A. W. Bostwick. For this conveyance there was no consideration, and Samuel W. Bostwick, when he took it, knew the facts which are above stated. A. W. Bostwick, the debtor, was and is now an insolvent, and has no property whatever in this State.

The foregoing facts are stated in the complaint, and the prayer is, in substance, that Mollie Bostwick, the debtor's wife, be declared to have taken the said real estate in trust for the plaintiffs as such creditors, also that Samuel W. Bostwick be declared now to hold the property subject to such trust, and that the property be sold, &c., &c.

Samuel W. Bostwick appeared and demurred to the complaint for the cause specified. The Supreme Court, at the Special and General Terms, sustained the demurrer, and dismissed the complaint. The plaintiffs appeal to this court.

*George F. Comstock,* for appellant.

I. The plaintiff's debtor, A. W. Bostwick, paid the consideration of the conveyance to his wife. But, according to the statute of uses and trusts, no interest at law or in equity vested in him. His wife took the whole estate, subject only to a trust expressly declared in favor of his creditors to an extent sufficient to satisfy their demands, and this is a pure trust to be reached only in equity. (1 R. S., 727, 728; see *Garfield* v. *Hatmaker*, 15 N. Y., 475.)

II. By the general law of trusts, the beneficiary may enforce them according to their terms and without proceedings at law. A trust created for a creditor does not require him to recover judgment for his demand, nor has the insolvency of the debtor anything to do with the remedy which courts of equity administer in such cases. But, in this case, the debt is ascertained and fixed by the judgment in Minnesota. The insolvency is also established by the return of the execution. And, as to the suggestion that the creditor must, by judgment or judgment and execution, first acquire *a lien* upon the property which he seeks to reach in equity, no

such lien now is or ever has been possible in respect to the property in question.

III. All the possible and conceivable *legal* remedies of the plaintiffs have been exhausted. In the State of the debtor's residence, this is proved by the judgment, execution and return. In this State (1) there is no property to be reached by judgment and execution, nor any property at all. (2) In this State it is not possible to sue the debtor at law either upon the original notes or upon the judgment rendered in Minnesota, and (3) there is no other mode of proceeding against him known to the laws of this State. (Code of Procedure, §§ 135, 227; 2 Rev. Stat., 1st ed., 3; id., 5th ed., 187.)

IV. The plaintiffs, therefore, having no other remedy, are entitled to enforce the trust in question against Samuel. W. Bostwick, who stands precisely in the situation of Mollie Bostwick, the first trustee, and to have their debt satisfied out of the trust estate. The judgment should be reversed, and the appropriate judgment directed for the plaintiffs.

*George Rathbun*, for respondent.

Article 4, section 1, of Constitution of U. S., provides simply that "full *faith and credit* shall be given in each State to the public acts, records and judicial proceedings of every other State; and the congress may, by general laws, prescribe the manner in which such acts, records and proceedings *shall be proved*, and the effect thereof."

Under this article and section, the congress has, by a general law, which will be found in 2 R. S., 397, prescribed the form and manner of authentication to *make them evidence in the courts of other States, and declare that when so authenticated they are to have the same faith and credit in any* State where offered, as they have by law in the State from which such records are taken.

The Constitution and law treat solely of judgment records of other States, as evidence in this State, and the mode of proof. Faith and credit are wholly different from *force and effect*. The first applies to evidence, the latter to the legal effect of a judgment upon the defendant, or by lien, upon his property.

The plaintiffs have, as they claim, a judgment against one of the defendants. It may be (although that fact is not averred in the complaint), that it is authenticated according to the act of congress above referred to. If so, it may be used as evidence, and is *"entitled to full faith and credit."* That is all. It is not a judgment in this State, but only evidence of a judgment in Minnesota, on which a judgment in this State may be recovered. This is the *foundation* on which this action rests. This court is called upon to exert its equitable power in favor of the plaintiffs, and to set aside deeds as fraudulent, sell the lands conveyed thereby, and pay this foreign judgment out of the avails.

I. The demurrer contains several grounds: First, said complaint does not contain facts sufficient to constitute a cause of action against the defendant, Samuel W. Bostwick. The plaintiffs, by their complaint, show that they have a judgment in Minnesota, and are prepared to prove that fact; and, also, that none of the parties to this suit ever resided in this State. They show no general or specific lien on the property in question. They have not tried any of the remedies at law. They are bound to show that all legal remedies are exhausted in our State courts, before this court can entertain jurisdiction of a case in equity. *Crippen* v. *Hudson* (3 Kern., 161 and 165), fully sustains this doctrine. The Code has not changed the rule. (Same case, 165.) This case refers to many others holding the same doctrine, which will be found in the opinion of JOHNSON, J. (*McElmain* v. *Willis*, 9 Wend., 518; *Greenwood* v. *Broadhead*, 8 Barb., 593.) The creditor must have a lien on the property before he can invoke the equitable powers of the court. (And see *Reubens* v. *Joel*, 3 Kern., 488.) This court held the same doctrine. (*Strang* v. *De Forest*, WELLES, J.) The plaintiff has no standing in court until after judgment and execution returned. (*Chatauqua Co. Bank* v. *White*, 2 Seld., 236 ; see page 252.) The party must allege a lien upon the real or personal property which is the subject of trust.

II. That said plaintiffs are creditors at large, without judgment against either of defendants in this action. We do

not claim that they have not a judgment in another State, but that they have none in this State. Without that, they cannot invoke the equitable powers of this court. (Same authorities as above cited, and 20 Barb., 378; 13 How. Pr., 7.)    The judgment stated in complaint is a simple contract debt. (*Hubbell* v. *Coudry*, 5 Johns., 132; *Bissell* v. *Hall*, 11 Johns., 168; *Andrews* v. *Montgomery*, 19 Johns., 162; 6 Wend., 447.)

III. That said complaint does not show that said plaintiffs have acquired any lien on the lands, &c.    The complaint is defective for this reason, and the demurrer is well taken. (See authorities before cited.)    There is nothing in the 4th article of the Constitution or law of congress to aid the plaintiff.

Porter, J.    Under our present constitution the Supreme Court is invested with general equity jurisdiction.    It exercises all the powers of the old Court of Chancery, except those which have been shorn away by legislative enactment. One of the most familiar of these inherent powers, is that of granting equitable relief in cases of fraud, by enforcing the rights springing from mere trusts, whether created by will, by deed or by operation of law.    This is the authority exercised by the court, when it grants relief to a creditor at large, against trustees in a general assignment made by an insolvent debtor.    It is a jurisdiction entirely independent of that, exercised under the special authority of the statute, to grant *ancillary relief* to judgment creditors in aid of their remedies at law.    In both classes of cases, the court has power to relieve from fraud, whether established by direct proof or by legal presumption.

The right of the party who invokes the exercise of this anterior and general jurisdiction, depends on his establishing *the relation of trustee and cestuis que trust*.    The right of the judgment creditor to the ancillary aid of a court of equity, depends on his compliance with *the statutory condition*, which requires him first to exhaust his legal remedy. In one case, the party has no remedy at law; in the other, he has none in equity, until his remedies at law are exhausted.

The land, upon which the plaintiff in the present suit seeks to enforce his statutory lien, was never the property of the judgment debtor, and never subject to execution for the payment of his debts. It is a farm of one hundred and fifty acres, situate in the county of Cayuga, which was conveyed by the former owner to the debtor's wife, in April, 1858. The grantor, the debtor and his wife, were all residents of Minnesota. The plaintiffs, who resided in Missouri, then held the demand in question, which amounted to over $4,000. The consideration of the deed to the wife was paid by the husband. Two months afterward, the premises were conveyed to her father, the respondent, who resides in the county of Cayuga, and who received the deed without consideration, and with notice of all the facts. On the 25th of October, 1858, the plaintiffs recovered judgment for the amount of their debt in the courts of Minnesota; and execution was returned unsatisfied, by the sheriff of the county in which the debtor resided.

It is obvious, upon this state of facts, that the plaintiffs had no remedy at law, either there or here. The property never belonged to the debtor, and was never subject to execution at the instance of his creditors. There were no laches on the part of the plaintiffs, through which the claim of the respondent could ripen into a right. The debtor was not here, to be sued, and he had nothing in this State subject to seizure by attachment. (*Olcott* v. *Tioga Railroad Company*, 20 N. Y., 210, 226; *Loomis* v. *Tifft*, 16 Barb., 541; *Montalvan* v. *Clover*, 32 Barb., 190.)

If the conveyance had been made to the wife before the revision of our statutes, the debtor, who paid the consideration, would have been entitled to a resulting trust; which could have been asserted either by him, or by judgment creditors, in virtue of his clear and absolute right. By operation of law, he and the grantee would have stood *in the relation of cestuis que trust and trustee.* In this particular instance, he might have been embarrassed in the assertion of his claim, by the fact that he united with his wife in the subsequent voluntary conveyance to the respond-

ent; but if the deed had been executed by her alone, he could have claimed in equity, the exercise of the jurisdiction now invoked by the plaintiffs, and in precisely the same character, *that of cestuis que trust by operation of law.* (*Finch* v. *Finch,* 15 Ves., 43; *Lloyd* v. *Spillet,* 2 Atk., 148; *Lane* v. *Dighton,* Ambl., 409; *Boyd* v. *McLean,* 1 Johns. Ch., 582; *Harder* v. *Harder,* 2 Sandf. Ch., 17.)

This rule of the common law was completely subverted by our statute of uses and trusts. Before the revision, when lands were conveyed to one, which were purchased with the money of another, the grantee was deemed a mere trustee for the actual purchaser; and unless he could bring himself within a recognized class of exceptional cases, he could be compelled in equity to convey and account.

This resulting trust, in favor of the party paying the consideration, and of those claiming in his right, was annihilated by the statute of uses and trusts; and the absolute title, as between the original parties, was vested in the nominal grantee. No interest whatever, either legal or equitable, inured to the party paying the price; and he had no remaining right on which, through judgment and execution, creditors could by any process fasten a specific lien. All claims in or through the actual purchaser were utterly extinguished; and if the statute had gone no farther, his creditors would have been without redress in the courts, whether of law or equity. But to prevent this precise abuse, the statute proceeds to declare a new and independent resulting trust, in favor of the general creditors of the party paying the consideration, in every case where the conveyance is fraudulently made to another with his assent; and, to render the provision still more effectual, the burden of proof is cast upon the grantee, to repel the presumption of fraudulent intent, which is attached to the transaction by operation of law. (1 R. S., 728, §§ 51 to 54.)

The distinction between this case, and that of a judgment creditor under the general statute, is very definite and obvious. There, the proceeding is to remove impediments in the way of reaching the *debtor's* property. Here, it is to

charge with a statutory lien, the property of *a third party*, which the debtor never owned.     There, it is to exercise *auxiliary* jurisdiction in aid of legal process.     Here, it is to enforce a trust, of which the courts of law have no jurisdiction.

That courts of equity possess original and inherent authority, to decree the performance of obligations springing from valid and effectual trusts, is too well settled to be considered anew as matter of grave judicial inquiry. (*Chautauqua County Bank* v. *White*, 2 Seld., 252; *Hagan* v. *Walker*, 14 How. U. S., 29; *Loomis* v. *Tifft*, 16 Barb., 541; *Darrington* v. *Borland*, 3 Porter, 9, 31; *McElwain* v. *Willis*, 9 Wend., 566; *Innes* v. *Lansing*, 7 Paige, 586; *Bodine* v. *Edwards*, 10 Paige, 504; *Earl of Chesterfield* v. *Jansen*, 2 Ves., Sr., 155.)

That the debtor in this case had no interest in the farm in question, either in law or in equity, and that the creditors had no remedy except to enforce their lien against the property in the hands of the grantee, in virtue of the "pure trust" in their favor, created by the statute of uses, was adjudged by this court in the case of *Garfield* v. *Hatmaker* (15 N. Y., 475).

That the present action does not stand upon the footing of a creditor's bill — that it simply presents a case for the exercise of the original jurisdiction of a court of equity, in enforcing a trust declared by law — and that the respondent, in accepting a voluntary conveyance of the property with notice of all the facts, took his title *subject to the trust impressed on it by law*, was also settled by the judgment of this court in the case of *Wood* v. *Robinson* (22 N. Y., 564).

The case presented being one of *pure trust*, we are not prepared to say that the action might not have been maintained, without recourse in the first instance to all attainable legal remedies against the principal debtor; but it is unnecessary to determine this question, as the fact is admitted, for the purposes of the demurrer, that all remedies at law were exhausted against the debtor, in the State in which he resided; and that in this State no legal remedy was available,

as neither his person nor his property were within our juris-
diction. "*Lex neminem cogit ad vana, seu inutilia.*" (Coke's
Lit., 197, b.)

The judgment of the Supreme Court should be reversed,
with costs, and with liberty to the respondent to answer
within twenty days after notice of the judgment, on pay-
ment of costs in the court below.

DAVIS, J.    The complaint avers and the demurrer admits
that all the parties to this suit are non-residents of this
State; that Albion W. Bostwick resides in the county of
Winona, in the State of Minnesota, and has no property
of any kind in this State, that the plaintiffs recovered judg-
ment against him in the district court of the third judicial
district of said State of Minnesota, and that execution thereon
has been issued to the county of the debtor's residence, and
returned *nulla bona.*

In *Garfield* v. *Hatmaker* (15 N. Y., 475), this court
adjudged that under our statute when a grant is made to one
person for a valuable consideration paid by another, no
interest legal or equitable vests in or results to the person
paying the consideration, but that a *pure trust in favor of
his existing creditors*, which can be enforced in equity only,
is imposed by the statute upon the legal title in the hands
of the grantee.   Under the facts alleged in the complaint
there can be no question but that the respondent holds the
farm in Cayuga county, subject to this trust in favor of
the creditors of Albion W. Bostwick.   The court below sus-
tained the demurrer on the ground that the plaintiffs have
not exhausted their remedy at law, but must sue over the
judgment against the debtor in the courts of this State, and
after recovery cause execution to be issued and returned
unsatisfied.   It may be regarded as the established rule of
courts of equity, that before the equitable property or inter-
ests of a debtor can be reached by suit in those courts, the
creditor must have exhausted his remedy at law; and the evi-
dence that such remedy is exhausted is the recovery of judg-
ment and the return of execution thereon. (2 Johns. Ch., 144;

*Wiggins* v. *Armstrong*, id., 285, 4 id., 671; 3 Barb. Ch., 46; *Crippen* v. *Hudson*, 3 Kern, 161.)

The provision of 2 R. S., 173, §§ 38, 39, apply only to creditor's bills, strictly so called, where the only claim to relief is, that the remedy of the creditor at law is exhausted; and they leave untouched the general powers of the Court of Chancery in reference to fraudulent trusts and conveyances. (Per Gardner, J., *Chautauqua Co. Bank* v. *White*, 2 Seld., 252.) This case is not therefore embarrassed by any statutory restriction because by its terms the statute applies to "property belonging to the debtor, or due to, or held in trust for him, and since *Garfield* v. *Hatmaker*," the debtor cannot be regarded as having any interest legal or equitable in the property sought to be reached in this case, nor is there any trust whatever in his favor. The general principles that governed the Court of Chancery in administering trusts of this nature are applicable to this case. The case presented is an anomalous one. There exists concededly, in the farm held by respondent, a "pure trust" in favor of the appellants. But to reach and apply this trust estate, a general rule of equity requires that they should have exhausted their legal remedy.

The rule of course presupposes that they have a legal remedy; but so far as the courts of this State are concerned, they have none. The facts stated by the complaint show that no remedy whatever *at law* exists in their favor in this State. That no court of law of this State has jurisdiction to entertain a suit to be brought by them against the debtor, either upon the judgment or the original indebtedness, and that it is therefore impossible for them to recover judgment in this State, and have their execution returned. (Code, §§ 131, 227, 2 R. S., 3; 2 id., 5th ed., 1871.) Does equity demand that a legal remedy shall be exhausted, *where none exists*, before it will enforce a trust created by statute, of which it alone has jurisdiction? The rule fails where the reason for it ceases. "*Cessante ratione legis cessat ipse lex*," is a maxim as well in equity as at law. Courts of equity "have adopted principles exceedingly broad and comprehensive in

the application of their remedial justice, and especially where there is any fraud touching property, they will interfere and administer a wholesome justice, and sometimes even a stern justice in favor of innocent persons who are sufferers by it without any fraud on their side." (2 Story Eq., 1265.) It is their special province to enforce trusts of this nature, and it would be a reproach to their justice if they demanded as an unbending condition, that a creditor shall have exhausted remedies at law, which as between the parties before them have no existence whatever. The only case I have found where a question at all like this has been considered is that of *Turbell* v. *Griggs* (3 Paige, 207). In that case the complainant recovered judgment in the Circuit Court of the United States for the Southern District of New York. After the return of his execution unsatisfied, he filed his bill in the Court of Chancery of this State, to reach the equitable assets of the debtor. The chancellor sustained a demurrer to the bill, holding that there was nothing in the judgment of a court of the United States although recovered *territorially* within our own State, to place it upon any higher ground than the judgments of the courts of a sister State, and that there was "no equitable ground for the interference of this court alleged in the bill except the mere fact, that a judgment has been recovered in that court, and that an execution issued thereon has been returned unsatisfied. This court (he says), upon the principle of comity, has gone so far as to compel a discovery from persons residing within its jurisdiction, in aid of the prosecution or defense of a suit in the court of a sister State. And I am not prepared to say, it might not, upon the same principle of comity, interfere to aid the parties in the collection of a judgment of a court of the United States, or of a sister State upon any sufficient grounds of equity appearing upon the face of the bill, to show that the exercise of such a jurisdiction was necessary to prevent a failure of justice." It seems to be fairly inferable from these remarks of the chancellor, that he would have retained the bill in that case, if it had appeared to have been one where the complainant had no remedy at law in the courts of this

State.    But if it be essential to jurisdiction in this case, I am prepared to go farther, and hold that the remedy of plaintiffs at law has been exhausted in this case, within the true meaning of the rule.    So far as the effect of the judgment is to establish the indebtedness, it has been accomplished by the judgment recovered in Minnesota.    That judgment appears to have been recovered upon personal service of process.    It is equally as conclusive upon the courts of this State, as to the existence of the *debt and its amount,* as a like record from one of our own courts would be.    (*Shumway and others* v. *Stillman,* 6 Wend., 447; *Reed* v. *Pratt,* 2 Hill, 64; Const. U. S., art. 4, § 1.)    Of course it is no lien upon property here, but a lien is not essential, nor could any judgment against the debtor be a lien upon this trust estate, as *Garfield* v. *Hatmaker* (*ubi sup.*) expressly decides.    Since, then, no statute controls it, as in ordinary creditors' bills, and no action or legal proceeding whatever can be brought in this State, either upon the original debt or the judgment, the court must look at the facts stated, to ascertain if all remedy at law has not been exhausted.    In this view of the case there was a remedy at law against the debtor; but where? only in the courts of a sister State: and that is shown to have been followed to its ultimate results.    Conceding it must also be repeated here in a case where it may be, yet when that is shown to be impossible under our law, it inevitably follows, that the law is exhausted.    Our law is not therefore subject to the reproach of creating by statute a trust for foreign creditors in property within our State, yet withholding from them all power of reaching and applying it.

I think the judgments below should be reversed.

Judgment reversed.