## SUPREME COURT.

### ANN C. KAMP agt. HEINRICH KAMP, known as HERMAN KRALL, and others.

The superior court of the city of New York has jurisdiction to grant a divorce and allow alimony where the parties are properly before the court.

If, after a judgment of divorce has been rendered by that court without making any provision as to alimony, and subsequently an order of that court is made on the foot of the judgment or decree, allowing alimony and making particular provisions for its security and payment out of certain real estate of the defendant, this order cannot be attacked collaterally and want of jurisdiction of that court interposed as a defense in an equitable action against the defendant in the supreme court to set aside as fraudulent certain conveyances made by the defendant to avoid carrying out and performing such order for alimony.

The jurisdiction of courts of equity to grant relief in cases of fraud and trust was not abolished by the statute which instituted a creditor's bill upon a judgment and an execution returned unsatisfied.

But it is well settled that an action to set aside a fraudulent conveyance may be maintained by a creditor without judgment, who is otherwise remediless.

*Held*, upon the clear weight of evidence on behalf of the plaintiff in this action, that the conveyances from the defendant to Schneider and from him to Miss Burgraff of the premises number 6 Elizabeth street, be declared to have been made with the fraudulent intent of defeating the recovery of alimony by the plaintiff from the defendant and the security which he was required to give, and that the said conveyances are void as against the plaintiff. A receiver appointed, &c.

*New York, November,* 1873.

HATCH & VAN ALLEN, *for plaintiff.*

WM. H. LEONARD (late justice supreme court), referee. It would be quite improper for me to sit in review upon the

authority of a judge of the superior court, to pronounce the decisions granting alimony in this case. The attempt of one judge at special term to review the order or decision of another judge, made at a special term, has been condemned by the court ·of appeals *In re Livingston* (34 *N. Y.*, 555,) and by the commission of appeals in *Fisher* agt. *Hepburn* (48 *N. Y.*, 41, 53).

I incline to the opinion, however, that the question of jurisdiction has been waived, if it was ever available. It should have been urged, in a case of this kind, before the court when the order granting alimony was applied for, and, if overruled, it should have been further urged by an appeal.

The New York superior court has jurisdiction of the parties and of the subject-matter. The only fact from which the objection is claimed to arise, is, that the judgment of divorce had been rendered without making any provision as to alimony, and that there was no authority to grant it afterwards. If this was an error or irregularity, the defendant *in the action* might have it corrected by appeal.

The objection to the jurisdiction comes up, in this case, on account of the form of the proceeding, it being after judgment rendered.

It cannot be claimed that the court had not jurisdiction to hear and decide the right of Mrs. Kamp to a divorce against Mr. Kamp, nor to direct alimony in a proper case. The granting of ·it after judgment is a question of practice, to be corrected, if irregularly or erroneously granted, by an appeal. It is very probable that the judge may have been influenced by the statute as to his power to order alimony after judgment rendered (3 *R. S.*, 236, § 58). It is so indicated by his opinion (44 *How. P. R.*, 505, *Kamp* agt. *Kamp*).

If a court has jurisdiction it has a right to decide every question which occurs in the cause, and its judgment is binding till reversed (*Wilcox* agt. *Jackson*, 13 *Pet.*, 511). Whether the proof shows a right to the relief sought, is judi-

Kamp agt. Kamp.

cial; whether the court has the authority to determine the right, when proven, is jurisdictional (*People* agt. *Sturtevant* 9 *N. Y.*, 263).

The granting of alimony in divorce is within the jurisdiction of the superior court when the parties are properly in court. If granted improperly, the aggrieved party must seek redress by appeal.

The order of the New York superior court cannot be attacked collaterally, and I consider this objection also fatal to the defense of want of jurisdiction (*Le Guin* agt. *Governeur*, 1 *Johns. Cases*, 492; *Embury* agt. *Connor*, 3 *Cow.*, 511, 522; *Wisson* agt. *Chamberlin*, 3 *Cow.*, 331; *Wilcox* agt. *Jackson*, 13 *Pet.*, 511; *People* agt. *Sturtevant*, 9 *N. Y.*, 263; *Bangs* agt. *Duckenfield*, 18 *N. Y.*, 597; *Fisher* agt. *Hepburn*, 48 *N. Y.*, 53; *Kinner* agt. *Kinner*, 45 *N. Y.*, 542).

The further question is raised by the defendants that the plaintiff has no standing for the reason that she has no judgment or lien against the premises sought to be reached, and hence that the action cannot be sustained. The defendants also cite a number of authorities to prove that "a creditor's bill" cannot be sustained without a judgment duly filed and docketed and an execution returned unsatisfied.

This is the rule without any doubt, and if the present action is not distinguishable from the cases mentioned, they must be considered as controlling, for the defense.

This action is not alone in aid of a common law judgment for the recovery of money. It is to remove a fraudulent conveyance alleged to have been made, substantially for the purpose of defeating the right of the plaintiff to a security by mortgage according to the direction of the order granting alimony, on a motion, made at the foot of the judgment for divorce, in the suit of *Kamp* agt. *Kamp*, in the New York superior court.

The superior court would never have attacked Kamp (or Krall) for a refusal to execute a mortgage on No. 6 Elizabeth street after the conveyance to Burgraff, on the conflicting evi-

Kamp agt. Kamp.

dence adduced at the trial of this action, as to her equitable right to the ownership of those premises.

The granting of an attachment for contempt in such a case would involve the trial of the whole issue of fraud, on a collateral motion, and would afford sufficient reason for denying the application.   It may be truly said that the plaintiff would be remediless, as to the right to obtain the mortgage adjudged to be executed to her, if it be not within the province of a court of equity to inquire into the alleged fraud committed by Kamp (or Krall) in executing and delivering to Burgraff the deed in question.   A court of law could not by any judgment or process known to those courts, create any lien against the said premises, charging them with the mortgage directed to be executed to secure the alimony.   Perhaps an action at law could be maintained to recover a common law judgment for a quarter's alimony due under the order, and an execution issued thereon and returned unsatisfied, so that the plaintiff might maintain a creditor's bill, under the statute, to set aside the alleged fraudulent conveyance.   But such relief would be very circuitous, and would not attain the remedy adjudged by the order for a mortgage to secure the alimony. I think it safe to hold that the plaintiff was remediless at law, and this fact is the first step towards maintaining jurisdiction in equity.

The jurisdiction of courts of equity to grant relief in cases of fraud and trust was not abolished by the statute which instituted a creditor's bill upon a judgment and an execution returned unsatisfied.

Courts of equity refuse relief except by a creditor's bill when that remedy might have been resorted to and maintained.   But the cases are numerous where actions have been maintained to relieve against fraud, and where trusts have been declared as against fraudulent grantees or purchasers of lands or goods, in favor of creditors, or persons having only a quasi right or lien, without judgment or actual lien.

The case of *McCartny* agt. *Bostwick* (32 *N. Y.*, 53) is a

notable instance. The plaintiff there had no judgment or lien in this state, and no relief could be had at common law; an action in equity was maintained in favor of the plaintiff, declaring that the defendant, who had received a title to land from a third party, where the consideration had been paid by the debtor, held it in trust for the creditors of the debtor, and that the court in such a case could annul the deed, &c.

The principle is there distinctly maintained, that an action to set aside a fraudulent conveyance may be maintained by a creditor without judgment, who is otherwise remediless. Numerous cases are there cited to sustain the doctrine (*The Chautauqua Co. Bank* agt. *White*, 2 *Seld.*, 252).

The case of *Loomis* agt. *Tifft* (16 *Barb. R.*, 541) is also cited in *McCartny* agt. *Bostwick* (*supra*), with approval. The case in 16 *Barb. Reports* was an action for equitable relief, in favor of a simple contract creditor, without any lien, against a voluntary conveyance made by the debtor with an intent to hinder and delay creditors.

The action was upheld on the ground that the plaintiff had no other available remedy. The debtor who made the fraudulent conveyance had died before the debt became due; his heirs could have no standing to attack the validity of the deed; the administrator could take no proceedings before the surrogate to sell the land, as the intestate did not own it; and an action against the administrator would be a vain thing, to which the creditors ought not, under the circumstances, to be required to resort (*Story's Eq. Jur.*, §§ 353, 369, 395).

These authorities seem to me to require that I should hold that the plaintiff has the right to maintain this action, for the reason that she has no other available remedy.

She has no other means of investigating the validity of the conveyance to Burgraff, nor of obtaining the mortgage security directed by the superior court to be executed. In confirmation of this position let us refer to some of the facts.

The title to the house and lot was taken by the defendant

Kamp (or Krall) in 1856, and he continued to hold and occupy it without objection or claim on the part of Burgraff, for a period of about fifteen years, and until after the proceeding was instituted, at the foot of the judgment of divorce, for the allowance of alimony. Miss Burgraff knew of the pendency of the proceeding; and she paid no present consideration for the conveyance by Kamp which finally vested the title in her; nor did Kamp receive any consideration for executing his deed.

If Burgraff paid anything for the premises, it was paid at the time of the original purchase by Kamp, and the deed was taken by him to himself in fraud of her rights, while he was acting as her agent and paying her money. If the evidence before me sufficiently proves this fact, the case is with the defendants. The presumption is the other way, from the facts before referred to. The defense lies in overcoming this presumption by proof that the money paid by Kamp in 1856 to purchase the property, and afterwards in 1870 to satisfy an outstanding mortgage for $2,000, belonged to and was furnished by her, for the special purpose of purchasing these premises for her own account. Miss Burgraff testifies, as a witness in her own behalf, positively to a state of facts sustaining the affirmative. She is corroborated by Heinrich Kamp, with whom she has been living, and, it must be inferred, performing the office of wife, since about the year 1853, and by whom she was first employed as a bar-maid at No. 158 Greenwich street, where he kept a boarding-house for girls and for the sale of lager bier; a house of prostitution or of some similar character. She states that he told her to carry on the place and she might have all that she could make; that she kept no bank account, but placed her money in a safe belonging to Mr. Kamp, which was in one of the rooms at the premises in Greenwich street. During this time, as appears from the evidence of Kamp, she made deposits to his credit at the Seaman's Savings Bank, having the money entered in his bank pass-book. It seems incredi-

ble that Miss Burgraff should have kept the accumulations from the time she says that Kamp instructed her to carry on the business for her own profit, which must have been about 1853, until the purchase of the premises in 1856, nearly three years, at a house where it would seem to be exposed to many considerable risks of loss, and where it would draw no interest.

It was a most unsafe place to keep such a sum of money. It is also worthy of observation, that she never appears to have required Kamp to pay to her any of the money which she deposited to his credit in bank, if it was not in fact his money, but hers, which she so deposited. It appears also that Mr. Kamp collected the rents of the premises so purchased until May, 1860, four years, when he moved there as a residence; and that Miss Burgraff never exercised any act of ownership until the conveyance to her. The premises were purchased for $6,050, and Miss Burgraff testifies that she furnished only something over $4,000. She does not say how she expected that the further sum required to complete the purchase was to be raised, although it must be supposed that she knew that a further sum of $2,000 was required.

Without keeping any bank account, she claims to have produced from her savings the further sum of $2,000 in 1870, to pay off a mortgage given by Mr. Kamp at the time of the purchase in 1856. She did not execute it, so far as appears by the evidence. She claims to have learned in 1871, for the first time, that the title was taken by Mr. Kamp in his own name. She thus concedes that she did not pay down all the purchase-money, but says nothing of the manner in which the deficiency was made up; she paid off, in January, 1870, a mortgage made by Kamp, for part of the purchase price, but insists that she was ignorant that the title was not in her name till some time in 1870. Mr. Kamp also paid the taxes, as he testifies, several years, but he does not claim that Miss Burgraff furnished any money for that purpose. The coincidence by which Mr. Kamp draws a large sum from his bank

account, June 16th, 1866, taking a deed of the premises dated on the same day, and on the 14th January, 1870, drew from his bank account $2,000, and on the next day paid off his mortgage for that amount is worthy of notice, and is not satisfactorily explained.

Although the evidence of Miss Burgraff is corroborated by that of Mr. Kamp, Mr. Shaffer and Mr. White, as to furnishing over $4,000 of the purchase price, I am constrained, from the extraordinary circumstances above referred to, to entirely discredit the evidence. It appears to me too improbable a story to be true.

I shall, therefore, direct judgment that the conveyances from Mr. Kamp to Schnieder, and from him to Miss Burgraff, be declared to have been made with the fraudulent intent of defeating the recovery of alimony by the plaintiff from Mr. Kamp and the security which he was required to give, and that the said conveyances are void, as against the plaintiff in this action.

That a receiver be appointed with authority to lease and to collect the rents and take charge of the property, and to pay therefrom the arrearages of alimony, and the costs directed by the order of the New York superior court and the costs of this action; and that the receiver continue to collect the rents and apply them to the payment of the said alimony as it becomes due, and after paying arrearages of alimony, and costs as aforesaid, and the costs of this action, and alimony thereafter as it becomes due, and the taxes, insurance and repairs, that he pay the surplus to the defendant, Magdalena Burgraff.

The defendant, Mrs. Burgraff, must have the privilege of executing and delivering to the plaintiff a mortgage to secure the bond of the defendant, Heinrich Kamp, directed by the order of the superior court, instead of the receivership, if she elects so to do by a notice in writing within thirty days from the filing of the judgment roll and notice thereof.