## SUPREME COURT.

WILLIAM HERRING agt. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, THE FARMERS' LOAN AND TRUST COMPANY and HUGH J. JEWETT, receiver, &c., of the Erie Railway Company.

*Creditor's action in equity—Legal remedies to be exhausted—Lien of creditor upon assets of a corporation—Receivership of a corporation pendente lite, its scope—Judgment sought to be impeached for fraud—Allegations of fraud— Pleading.*

The complaint shows that the Atlantic and Great Western Railroad Company issued, in 1874, $1,000,000 of $1,000 bonds, maturing in 1904 (of which plaintiff owned thirty-six), on each of which was an agreement of the Erie Railway Company guaranteeing to the bearer "the due and punctual.payment of the interest thereon;" that no interest had been paid on these bonds since November, 1876; that the Atlantic and Great Western Company had become insolvent and its property and franchises had been sold under foreclosure, and the Erie Railway Company had been, in an action brought by the attorney-general in the name of the people, dissolved on the ground of insolvency; that the Erie Company's property had previously been sold to trustees on foreclosure; and afterwards, in pursuance of a plan and agreement, had been transferred to a new corporation, the New York, Lake Erie and Western Railroad Company, one of the defendants; and that at the time of the commencement of the Erie foreclosure action the Erie Company owned several millions of property not included in the mortgage foreclosed, which was sold under the foreclosure to the prejudice of the plaintiff and other unsecured creditors. The pleadings and judgments in both the foreclosure and people's Erie suits are set forth in the complaint. The plaintiff asserts that the Erie property, not included in the mortgage foreclosed, constituted a trust fund, to be applied to the payment of the interest on the Atlantic and Great Western bonds through the guaranty, and that the foreclosure proceedings, and all the proceedings in the people's suit, so far as they ratified the sale of the property not included under the mortgage, were fraudulent and void, and that the court rendering the judgments had no jurisdiction, and asks that all orders and decrees in those actions be set aside so far as they affect the property referred to, and that it be distributed among plaintiff, and those similarly situated, to the extent of the interest on these bonds:

*Held* (on demurrer to complaint): 1. That plaintiff is not entitled to equitable relief because he has not exhausted his legal remedies against his debtors. 2. The alleged debtor corporations should have been made.

Herring agt. New York, Lake Erie and Western R. R. Co.

parties to the action; and it is no sufficient answer that one is insolvent and the other dissolved, the default having arisen in 1876, and the Erie Company not having been dissolved until 1879.   3.  The court had jurisdiction to render judgment in the people's suit and foreclosure action, and by the judgments in those actions the subject-matter presented in this action has been fully adjudicated; and as all these things appear by the plaintiff's complaint the conclusion follows that no cause of action is disclosed therein.   4.  The receivership of Jewett in said two suits, as it existed before final judgment, was not of such a nature as to make it subject to the statutory provisions requiring notice to be given to creditors to present their claims, and it does not avail plaintiff, therefore, that no notice was given him in those actions.

*Special Term, July,* 1882.

DEMURRER to complaint.

*Wm. W. McFarland* and *George F. Comstock,* for demurrers.

*Gray & Davenport* and *Roscoe Conkling,* for plaintiff, opposed.

VAN VORST, *J.* — The defendants have separately demurred to the plaintiff's complaint and have urged several grounds of demurrer.   But from an examination of the complaint I do not think it necessary to go beyond the principal ground assigned, which is, that the complaint does not state facts sufficient to constitute a cause of action.   The proper disposition of that question requires that I should state, with some detail, much of the pleading to which objection is made.

The plaintiff is the owner of thirty-six bonds, of the nominal value of $500 each, issued by the Atlantic and Great Western Railroad Company, in the year 1874, called western extension bonds, bearing interest at the rate of seven per centum per annum, payable semi-annually.   The bonds themselves will mature on the 1st day of February, 1904.   Upon each bond is written an agreement, made by the Erie Railway Company, which, at the time the bonds were issued and the agreement executed, was a corporation existing within this state.   The agreement is in these words : " The Erie Railroad Company hereby guarantees absolutely to the bearer of this bond, during its currency, the due and punctual payment of the interest thereon."

The thirty-six bonds of the plaintiff were purchased by him in England, and they form part of an issue of bonds amounting to $1,000,000 and upwards, which were negotiated in London in the year 1874. Each bond of the entire issue bears the guaranty of the Erie Railroad Company in the words above given. The payment of the principal and interest of these bonds was secured by the issue and pledge of shares of stock in the Cleveland, ·Columbus, Cincinnati and Indianapolis Railroad Company of the par value of $100 each, and simultaneously with the delivery of the bonds in London there was delivered to certain persons, resident in London, as trustees, one share of stock of the railroad company above named, for every $100 in nominal value of the bonds negotiated and sold. These shares of stock are still held by the trustees or their successors. It was a part of the agreement, through which the loan was created and negotiated, that the trustees should apply all dividends accruing on the railroad shares towards the payment of the interest on the bonds, as it should mature, and further that the Erie Railroad Company should, in furtherance of its guaranty, in the event that such dividends should not be sufficient for the purpose, and the Atlantic and Great Western Company should not provide for such deficiency, furnish to the trustees the funds necessary to meet such interest as it should mature. It was a further part of such agreement that after six months default in payment of interest, the trustees might sell the shares and pay off all the bonds. Interest was paid upon the bonds until the 1st day of November, 1875, when the interest for the next preceding six months fell due, at which date two and one-quarter per cent interest on the principal of the bonds, instead of three and one-half per cent then due, was paid, out of dividends from the Cleveland shares held by the trustees, leaving one and one-quarter per cent interest unpaid and in default. Since the 1st day of November, 1875, the trustees have received further dividends upon the shares of railroad stock, out of which they have paid the balance of interest due on

the 1st of November, 1875, and have also paid the interest due on the 1st day of May, 1876, and a portion of the interest due on the 1st of November, 1876, since which time no interest has been paid on the bonds.

When this action was commenced the Atlantic and Great Western Railroad Company, the maker of the bonds, was insolvent, its property and franchises having been sold under a judgment rendered in an action to foreclose a mortgage, which was a lien thereon; and the Erie Railroad Company, in pursuance of a judgment of this court, rendered in an action brought by the attorney-general in the name of the people, had been, on the ground of its insolvency, dissolved. But before the judgment of dissolution had been rendered in the people's action, and during its pendency, the property and franchises of the Erie Railroad Company had been sold, in pursuance of a judgment of foreclosure made in an action commenced by the Farmers' Loan and Trust Company, as mortgagee, against the Erie Railroad Company, the maker of the mortgage. The property and the franchises of the Erie railroad were purchased at the sale under the judgment of foreclosure by E. D. Morgan, I. Lawler Welsh and Daniel A. Wells, as trustees, subject to prior mortgage liens which were outstanding. Afterwards the New York, Lake Erie and Western Railroad Company, a defendant herein, was duly incorporated, in pursuance of a plan or agreement which had been theretofore made, in pursuance of chapter 430 of the laws of this state, passed in the year 1874, and amendments thereto. The purchase made by Morgan and his associates, at the foreclosure sale, was in furtherance of such plan and agreement and to carry the same into full effect. Afterwards Morgan and his associates executed and delivered to the New York, Lake Erie and Western Railroad Company a deed and transfer of the property which they had purchased at the foreclosure sale, and the same is now held and owned by that corporation.

It is claimed by the plaintiff, and his complaint herein in substance so alleges, that at the time of the commencement

of the foreclosure action by the Farmers' Loan and Trust Company, the Erie Railroad Company owned property consisting of bonds, stocks, securities and other valuable assets, to the amount of several millions of dollars, which was not included among the property mortgaged, or covered by the mortgage which was afterwards foreclosed; and that such property was sold under the judgment of foreclosure, to the prejudice of the plaintiff and other unsecured creditors of the Erie Railroad Company.

The plaintiff claims that the estate and property of the Erie Railroad Company not covered by the mortgage foreclosed, under the facts alleged in the complaint, constituted a trust fund, to be applied to the payment of the interest accrued and to accrue on the bonds of the Atlantic and Great Western Railroad Company, through the guaranty made by the Erie Railroad Company above described; and that the judgment of foreclosure and sale, and all the proceedings in that suit, and all the proceedings in the people's suit, to which particular allusion will be hereafter made, in so far as they directed or ratified the sale of any property of the Erie Railroad Company not included under the mortgage to the Farmers' Loan and Trust Company, are fraudulent in law and void; and that the court which entertained such proceedings and rendered said judgments had no jurisdiction of the premises.

The plaintiff also claims that such proceedings and judgment constitute no bar against the plaintiff, and other creditors similarly situated with himself, from pursuing such property, in whose hands soever the same be found, and subjecting and applying the same to the purposes of said trust; and he asks as relief, among other things, that all of said orders and decrees may be set aside, that the sale of the property of the Erie Railroad Company not covered by the mortgage above mentioned may be declared to be invalid, and that the same may be set aside; that an account of such property be had in this action and a receiver thereof be appointed, and that such

property and its proceeds be distributed among the plaintiff and those similarly situated with himself, to the extent of the interest due or to grow due upon the bonds held by them. Other relief of a kindred nature and in the same direction is also asked by the plaintiff.

The first difficulty in the way of the plaintiff's success in this action, for the equitable relief demanded, or any kindred relief as to the property in question, now in the possession of the defendant, the New York, Lake Erie and Great Western Railroad, and acquired by it under and in pursuance of a judgment of this court, is that he is simply a creditor-at-large. His claim has not been determined by the judgment of any court, and his remedies at law are wholly unexhausted. Nor are either of the alleged debtor corporations, the Atlantic and Great Western Railroad Company or the Erie Railroad Company, parties to this action. And should an attempt be made here to adjust and determine the plaintiff's demand, it would be in the absence of the debtors themselves, who would not be concluded by the result. It is not a complete or satisfactory answer to this suggestion, that the one corporation is insolvent and that the other has been dissolved. It is quite clear from the structure of the plaintiff's complaint, that his claim against the defendant whom he has impleaded, is equitable only.

Creditors at large are not favored in equity, and are not encouraged in their attempts to reach property and assets of their debtors, and subject the same to the payment of their demands, until they have exhausted all legal remedies by judgment and execution against the debtors themselves and their property. The rule upon this subject in this State appears to be well established, and the current of authority is altogether in that direction. It is only necessary to notice some of the later cases in the court of appeals, in which reference is made to this rule, and to the earlier cases in that court and in the court of chancery (*Dunlevy* agt. *Tallmadge*, 32 *N. Y.*, 460; *McCartney* agt. *Bostwick*, 32 *N. Y.*, 53; *Allen*

agt. *Thurston*, 53 *N. Y.*, 622; *Geery* agt. *Geery*, 63 *N. Y.*, 252; *Estes* agt. *Wilcox*, 67 *N. Y.*, 265; *Sturgis* agt. *Vanderbilt*, 73 *N. Y.*, 385; and see *Wintringham* agt. *Wintringham*, 20 *John.*, 297).

It is suggested, however, that the property of a corporation is a trust fund for the payment of its debts, and that whenever it has been wrongfully and fraudulently diverted, creditors may reach and have it applied to the payment of debts. But kindred redress in equity is open to the creditors of individual debtors whose property has been in that manner diverted. But it does not, by any means, follow that resort may be had to a court of equity by a creditor at large for such purpose. But it is in substance urged that when the property in question reached the hands of the new corporation after its sale under the judgment in the forelosure action, it was peculiarly a trust fund for the creditors of the Erie Railroad Company, which was afterwards dissolved by the judgment of this court, and that the receiver's possession thereof at the time of the sale and previous thereto, was for the benefit of the creditors of the corporation, who had a lien thereon to the amount of their respective claims, through which, notwithstanding the sale, they can follow it. The character of this receivership will be hereafter considered as well as the duties imposed upon the receiver by the court, with respect to the corporate property, and it will be seen that it does not support the plaintiff's contention to the extent urged in that behalf. It is not necessary to question but that a court of equity has original jurisdiction over trusts, and will enforce them, or that it has such jurisdiction to relieve against frauds in all cases. A court of equity has jurisdiction to enforce the rights of a beneficiary under a well defined trust, without his resort in the first instance to remedies strictly legal. These are cases, however, where the rights of the parties are unalterably fixed by the trust itself.

The relation of a creditor at large to a corporation is not of that nature. Upon the dissolution of a corporation a court

of equity will give its aid, upon an appropriate application, to a just administration of its property and assets, so that the interests of creditors and all others will be secured.

In the *Ocean National Bank* agt. *Olcott* (46 *N. Y.*, 17) the rule in equity first above referred to was applied to the case of a trust expressly created by statute. The subject of contest in that case was a resulting trust in favor of creditors, to the extent necessary to pay their demands, where the consideration for land was paid by one person and the land conveyed to another.

CHURCH, Ch. J., says: "It is obvious that the interest or right, or whatever it may be termed, secured to creditors by the statute, is an equitable interest enforceable only in equity." And he adds: "The general powers of a court of equity over trusts and frauds may be conceded as sufficient to confer jurisdiction; but this concession does not dispense with the rule of equity, which existed independently of the statute, that creditors must exhaust available legal remedies before resorting to courts of equity to reach equitable assets." And to the same effect is *Underwood* agt. *Sutcliffe* (77 *N. Y.*, 63).

But it is urged on the plaintiff's behalf that the Erie Railway Company no longer exists and that it is not possible to obtain a judgment against it, and that the Atlantic and Great Western Railroad Company is insolvent. The Erie corporation was not dissolved until the 27th day of November, 1879, and the alleged defaults in the payment of interest occurred in the year 1876. The failure of the plaintiff to prosecute that corporation before its dissolution, would seem to be an answer to that suggestion.

Neither the death nor insolvency of a natural person has been regarded as sufficient to relax the rule in equity; that before relief can be had by a creditor in such court, of a nature kindred to that sought in this action, the legal remedy must be first actually exhausted.

But I shall not rest the decision of this case exclusively upon the failure of the complaint to show that the plaintiff

has exhausted his legal remedies against his debtors, and will proceed to examine the principal ground upon which the plaintiff rests his claim for equitable relief; and that is, that the court had no jurisdiction to render the judgments in the fereclosure action, or in the people's action, by which the property, which it is claimed in this action was not included under the mortgage, was sold under the judgment, and which in the end came into the possession of the defendant the Lake Erie and Western Railroad Company.

If the court had jurisdiction to render the judgments they cannot be impeached in this action. Judgments of courts having jurisdiction of the subject and the parties cannot be collaterally reviewed, and all errors and irregularities should be remedied in the actions themselves. Fraud will, however, vitiate a judgment, even when it is attacked directly by one whose interests are affected, and who has a standing in court to impeach it.

It is true that there are allegations of fraud made in the complaint in connection with acts and omissions of the receiver in the foreclosure suit, and in the people's action, but it will be seen hereafter that nothing is disclosed under that head which should impeach these judgments, or qualify their force and operation, as solemn and effective adjudications.

The defendant Jewett was appointed receiver in both actions, and it is urged that the receiverships in the two actions were improperly united in the same person, as the interests involved in the one action conflicted with those in the other. But when he was appointed as receiver in the people's action, Jewett was already receiver in the foreclosure suit. His appointment was asked for by the attorney-general in the people's action, and the court granted the request. The propriety of that action cannot be a subject of consideration here. It was exclusively a question for the court which made the appointment.

It is urged, however, that creditors of the Erie Railroad were not represented. Creditors at large were neither neces-

sary nor proper parties to either action, and in the people's action for the dissolution of the corporation every interest was represented by the plaintiff therein and the receiver.

In the people's action it was in the end adjudged, "that the receiver in this action did not at any time acquire, hold or dispose of any property of any kind not covered by or subject to the lien of the mortgage of the defendant the Erie Railway Company, to the said defendant the Farmers' Loan and Trust Company, which mortgage has been foreclosed, as fully and at large set fourth in the report of the referee." And further, "that the judgment of foreclosure in the action of the Farmers' Loan and Trust Company, and the sale under the judgment, and the conveyance made by the referee in pursuance of such sale, the conveyances and assignments subsequently made to the purchasers at such sale, and by such purchasers to the New York, Erie and Western Railroad Company, did vest in the said company a good and valid title to all the property, of every kind and description, embraced and described in said judgment and in the said conveyances and assignments." This determination was followed by a direction dissolving the Erie Railroad Company, and an order that "Hugh J. Jewett," who had previously been appointed temporary receiver in the action, should be "continued as receiver of the Erie Railroad Company, with all the power and authority conferred by law upon receivers of dissolved corporations in such cases."

From the terms of the judgment in the people's action, it is clear that, before it was finally made, the property which is the subject of contention in this action had already been sold, under the judgment of foreclosure, as a part of the mortgaged premises, and had actually gone into the possession of the New York, Lake Erie and Western Railroad Company.

But it is urged that the adjudication in the people's action was void, for the reason that the receiver therein had not previously taken all the steps which the statute required of him, and that no judicial inquiry had in fact been had, in either the

forclosure suit or the people's action, to ascertain what portion of the property of the Erie Railroad Company was covered by the mortgage and what was not covered thereby; that the general creditors of that corporation had not been notified of the proceedings, and that their rights had been sacrificed and disregarded by the judgment and sale, through which property not covered by the mortgage had been sold and transferred.

But an examination of the complaint, however, discloses the fact that the question as to what property of the Erie Railroad Company was embraced within the terms of the mortgage was neither overlooked nor disregarded. In the foreclosure action, before judgment was rendered therein, the attention of the court was directly called to this subject, and to the necessity of an inquiry and an accounting with respect to the same. It appears by the proceedings therein, that it was claimed by the plaintiff therein, that there was in the hands of the receiver, in that action, stocks, bonds and other property and assets to the amount of $20,000,000 and upwards, alleged to be held as collateral security for advances made thereon by the Erie Railroad Company or its receiver, and certain stocks held by the Erie company subject to certain trusts. It was also claimed that an unascertained portion of such securities were covered by the mortgages in process of foreclosure; that another uncertain portion had been acquired with moneys supplied by the respective parties, for whom the Farmers' Loan and Trust Company was trustee; that advances had been made upon or against a further portion thereof out of the income of the mortgaged property in the receiver's hands; that the Farmers' Loan and Trust Company, the plaintiff in the action, had certain interests in such of said securities, as were held as collateral and in trust, and that the receiver had paid out from the income of the mortgaged premises in his hands, certain debts of the Erie Railroad Company, contracted prior to his appointment as receiver, for labor, salaries and supplies, which of right ought to be reimbursed to the

mortgage creditors out of the assets of the company not cov-
ered by the mortgage; that certain resulting trusts existed in
favor of the mortgage creditors in such securities, and that
they or their proceeds, in case of their sale, should be dealt
with by the receiver as a part of the general funds in his
hands, under the several mortgages, and that it was impracti-
cable at that time to take and state a final account in respect
to the matters above referred to, and that such final account-
ing and adjustment could only be had with due reference to
the rights and interests of the parties upon the accounting
preliminary to the final decree. Afterwards an order was
made in the foreclosure action authorizing the receiver to treat
such fund and property as a part of the general fund and
estate embraced in the consolidated mortgages, without preju-
dice to any equitable rights and interests of the respective
parties, which might be established on a final accounting.
And in the judgment of foreclosure subsequently entered in
that action, this property is specifically mentioned, and the
judgment recites, among other things, " that all or nearly all of
such stocks, bonds and obligations are embraced and described
in the inventory of the mortgaged premises and property
filed in this action by the receiver, in pursuance of the order of
this court;" and it was also recited in the judgment that the
"said stocks, bonds, securities and obligations are held by
the receiver as part and parcel of the property and premises
mortgaged to the plaintiff, and as the proceeds of the rents,
profits and issues of the mortgaged premises during said
receivership, subject, however, to the liens existing thereon
by reason of such pledge or pledges as hereinbefore stated."
And it was provided in the judgment of foreclosure " that the
referee appointed to sell the mortgaged premises should be
authorized, at the request of the plaintiff's attorneys, to expose
for sale and sell, as part of the mortgaged premises, all and
singular the said stocks, bonds, obligations, accounts and evi-
dences of indebtedness and other choses in action, of which
the receiver may have become lawfully possessed in any way

or manner during his receivership, subject, however, to any lawful lien or liens existing thereon, whether created by the receiver or otherwise." The judgment of foreclosure described the property directed to be sold thereunder by the description contained in the mortgage, to which is added these words : "And this description is to be understood as embracing and including all and singular the choses in action, stocks, bonds, book accounts, bills receivable and other evidences of indebtedness, &c., and other property hereinbefore mentioned." And all such property was in the end sold by the referee, in pursuance of the terms of the judgment, and was purchased by Morgan and others, his associates, as trustees, as has been already mentioned. This sale under the judgment was subsequently confirmed by the court. By an order made in the action upon the petition of the receiver, he was subsequently authorized and directed to transfer and deliver to the New York, Lake Erie and Western Railroad Company, to whom a conveyance of the property had been made by the trustees, all the property and franchises whereof he was possessed as receiver in the action, and which were embraced, or intended to be embraced, in the judgment of foreclosure, subject to the reservations and exceptions therein, and " subject to all and singular the rights of the people of this state in and to the premises, or any part thereof, as the same may be ascertained on due inquiry and examination by the attorney-general in the action of. *The People of this State* agt. *The Erie Railroad Company*, now pending, to the end that such rights and interests may be fully protected as if this transfer had not been ordered and directed."

In pursuance of this order, Jewett, the receiver, transferred and delivered to the New York, Lake Erie and Western Railroad Company all the property referred to in the order, and which had been sold by the referee under the judgment of foreclosure, subject, however, to the terms of the order. Afterwards, upon the petition of the attorney-general, presented by him in the action in favor of *The People of this*

*State* agt. *The Erie Railroad Company*, an order was made referring it to a referee to take testimony for the purpose of ascertaining what property or assets, if any, the receiver in the foreclosure action acquired, held or disposed of, not covered by or subject to the lien of the mortgage above mentioned, which had been foreclosed, and if any such property had been disposed of by said receiver, what disposition has been made thereof, and also what rights and equities, if any, the said Farmers' Loan and Trust Company and the purchasers at the mortgage sale of the mortgaged premises, or their assigns, had or have in or to such property or assets, or any part thereof. Afterwards, by a supplemental complaint, first in the people's action, the New York, Lake Erie and Western Railroad Company was brought in as a defendant, and the foreclosure proceedings were set up, and it was alleged in the reply of the people to the answer of the Farmers' Loan and Trust Company to the supplemental complaint, that during his receivership the said receiver had lawfully acquired, for the benefit of the estate of the Erie Railroad Company, certain other property, including stocks and bonds of other corporations, which were not affected by the said mortgage, nor subject to the lien thereof ; and the reply alleges, in substance, that this property had been improperly, wrongfully and unlawfully included in the judgment entered in the action to foreclose the mortgage and in the sale thereunder, and was wrongfully and improperly included in the deeds to the New York, Lake Erie and Western Railroad Company from the purchasers at the sale.

Hearings were had before the referee appointed in the people's action, from time to time, upon the subject matters referred, and upon the coming in of the referee's report a final judgment was entered in that action upon the 25th day of November, 1879, in which it was adjudged that the referee's report, which had been made, should be confirmed. And it was further adjudged as follows : "That the receiver in this action did not at any time acquire, hold or dispose of any

property of any kind not'covered by or subject to the lien of the mortgage of the said defendant, the Farmers' Loan and Trust Company." And it was further in substance adjudged, the language of the judgment itself having been above given, that the conveyances made by the referee in pursuance of the sale under the judgments, and the conveyances and assignments subsequently made, by which the title to all the property, in the end, came to the ownership and possession of the defendant, the New York, Lake Erie and Western Railroad Company, "did vest in the said company a good and valid title to all the property of every kind and description embraced and described in the said judgment and in the said several conveyances and assignments."

It seems to me quite clear that by these judgments, the subject matter, which is presented in this action, has been fully adjudicated, and as these things all appear by the plaintiff's complaint, they lead to the conclusion, which is irresistible, that no cause of action is disclosed by the plaintiff's pleading.

But it is urged that no notice was given of the hearings before the referee to the unsecured creditors of the Erie Railroad Company, including the plaintiff, and that it was a necessary step to the acquisition of jurisdiction by the court, to hear and pass upon the accounts presented to and passed upon by the referee, and the results of the hearing before him, and to the rendering of final judgment, that such notice to creditors should have been given.

It is also claimed in this connection, on the plaintiff's behalf, that the receiver, Jewett, never advertised any notice of his appointment, as such, or any notice to creditors holding open or subsisting contracts of the Erie Railroad Company, or to other creditors, to present their claims to him; and that the provisions of the statutes of this state, which cast duties of the character above mentioned upon the receivers of corporations, applied to the receivership under consideration.

I am persuaded that the receivership of Jewett, as consti-

tuted, and as it existed before the final judgment in the people's action, was not of such a nature as to make it subject to the statutory provisions to which reference has been made by the learned counsel for the plaintiff. When a court of equity acquires jurisdiction under a statute or otherwise, to dissolve a corporation, and that was the object of the people's action, and when the dissolution is ordered, the property and estate of the corporation is to be administered in pursuance of existing statutes, but if there are no statutes on the subject, then under the general powers of a court of equity and according to its rules and practice.

The Revised Statutes do make provision for the appointment of a receiver in an action brought against a corporation by a judgment creditor, as also in actions against moneyed corporations and insurance companies, and in the case of the voluntary dissolution of a corporation. But no statutory provision appears to have been made for the appointment of a receiver in an action commenced by the attorney-general for the dissolution of a corporation under section 38 of article 2, title 4, chapter 8, part 3, on the ground of its alleged insolvency.

Section 430 of the Code of Procedure authorizes an action by the attorney-geneal for the purpose of vacating or annulling the existence of a corporation for causes which are therein designated, amongst which are "when it shall have done or omitted any act which amounts to a surrender of its corporate privileges and franchises." It was, however, claimed by the learned counsel for the defendant that the proceedings of the attorney-general were founded upon section 38 of the statute above referred to. But I do not think that this point is decided by determining whether the people's action was under the statute referred to or under the Code of Procedure.

Section 444 of the Code provides for the appointment of a receiver in an action brought in pursuance of its provisions, "*after judgment*," and it is made the duty of the attorney-general, after judgment, to institute proceedings for the appointment of such receiver.

But there is ample power in the court in which the action is pending, before judgment, to protect the property of a corporation against which such an action has been brought, by the appointment of a temporary receiver, and such receiver would be subject to the order and control of the court.

It is a familiar power exercised by a court of equity to appoint, at the very commencement of the action, if grounds therefor exist, a temporary receiver to take the mere care and control of the property until the court shall in the end determine what shall be done with it.

In the complaint in the people's action, after the demand for judgment that the corporation be dissolved, it is asked that in the meantime, and while such proceedings are being had and taken in the premises, " a receiver may be appointed to take hold and possess, under the immediate authority and direction of this court, all and singular the franchises, property, railroad and appurtenances of the said company," and in substance, with power to operate the road and to preserve and protect the corporate existence until the final judgment, and to borrow money on the pledge of the corporate property and the rents and revenues thereof subject to the order and direction of the court.

As Jewett was not, before judgment, a receiver to marshal or distribute the assets among those who should in the end be determined to be entitled thereto, but only to hold the property until it could be judicially determined whether there was a valid existing ground for the dissolution of the corporation and the annulling of its charter, it is quite evident that, for the purposes suggested, there was no occasion to advertise his appointment, nor for the notification of creditors to present their claims; and the duties and power imposed upon the receiver, such as the running of the road and the incurring of debts, would, it seems to me, be wholly inconsistent with any proceeding looking to a marshaling or distribution of assets before judgment.

There is no statute, in so far as I can discern, which regu-

lates the duties or action of such a temporary receiver, and for his guidance he must look to the court which has appointed him, and to the rules and orders which have been established by it.

I have no idea that such a receivership constitutes a special trust for creditors not parties to the action, of a nature which would forbid the court from controlling its action and operation in disposing of the property as justice and equity might require, pending the proceedings, without notice to them. For it is to be observed that the court itself has the care of the property, the receiver is but its creature.

Unless appointed under the statute directing proceedings against corporations, the receiver has no active powers, except such as are conferred upon him by the order of his appointment and the course and practice of the court ( *Verplank* agt. *The Mercantile Ins. Co.*, 2 *Paige*, 452).

For these reasons I am satisfied that all the statutory proceedings, in so far as they apply to receivers appointed under section 38 of the statute or Code, with respect to the ascertainment and adjustment of the rights and interests of the creditors in and to the property under the care and control of the court, and for its distribution, apply only to a receivership created by the final judgment in the action. The omission to give such notices cannot, therefore, be regarded as fraudulent, nor can their absence render the judgment void. In so far as the receiver has acted he has observed, as it seems, the orders and directions of the court with respect to the property. It would be a misuse of terms to call such obedience evidence of a fraudulent intent on the receiver's part.

Before judgment the whole subject-matter was within the control of the court, and was to be disposed of by it, when moved thereto by the parties, by a proper inquiry conducted in the usual way and as justice required. And before judgment, as the complaint shows, the question in regard to what property the mortgage covered was investigated and determined through a reference. And although this was not definitely

determined in the foreclosure action, in which it was sold subject to liens and an accounting as to the rights and interests of others in it, yet in the people's action, which was then pending, an inquiry was initiated and completed in the manner the court directed and the question was put at rest by the judgment, and that judgment must be regarded as settling that question, " *interest rei publicæ ut sit finis litium.*"

It is not intended by this statement to question but that third persons may attack a judgment relied upon against them, upon the ground that it was fraudulently or collusively obtained. For fraud " avoids all judicial acts, ecclesiastical or temporal" (*Fermor's Cases*, 3 *Rep.*, 780 ; *Broom's Legal Maxims*, 335). But for mere errors or irregularities in proceedings a judgment cannot be collaterally impeached. For the rule is well recognized that where the court has jurisdiction of the subject-matter and of the parties, its judgments, although irregular in form or erroneous even, are conclusive so long as they remain unreversed ; and they cannot for such defects be collaterally attacked, for a court of equity will not take upon itself a revisory jurisdiction.

The fact that receiver Jewett was not a party defendant in the people's action does not disturb the binding force of that judgment. He was present in the litigation as receiver, appointed by the court to hold the property, which was itself in " *custodia legis.*" And in order to justify the court in entertaining a proceeding to vacate and annul a solemn judgment upon the ground of fraud in its recovery, the charges and allegations of fraud should be specific and clear, and a pleading seeking to show it cannot be sustained upon general statements of fraud and collusion, nor upon facts which, when stated, dispel the idea of its existence.

There is but one other subject to which it seems necessary to refer. By the final judgment in the people's action the defendant Jewett was continued as receiver of the Erie Railroad Company, with all the powers and authority conferred by law upon receivers of dissolved corporations. It is quite

clear that, as such receiver, Jewett is entitled to all the assets of the Erie Railroad Company not legally disposed of; and any action or proceeding necessary for their recovery can be maintained by him, or at the instance of creditors, should the court so order, in his name. If he has hitherto neglected any statutory or other duty, he can be compelled by like order, upon an application in the suit in which he was appointed, to take appropriate action in the premises.

The result which I have reached is, that the complaint does not state facts sufficient to constitute a cause of action, and for that reason there must be judgment for the defendants on the demurrers.