## Loomis *vs.* Tifft and others.

Where a defendant demurs to the complaint, without objecting to the want of proper parties, or to the form of the action, he waives the right to insist upon those objections; and for all the purposes of the demurrer the complaint will be deemed unobjectionable by reason of any defects of that nature.

Where a complaint alleged, and the defendants by their demurrer admitted, that L. became indebted to the plaintiff in a large sum of money, for which he gave his promissory note; that he afterwards conveyed his real estate to third persons, with intent to defraud his creditors, and without any valuable consideration therefor; that he died insolvent and intestate; no assets or property coming to the hands of his administrators, and no real estate descending to his heirs, and the promissory note not being due at the time of his death; that one of the defendants was one of the fraudulent grantees of L., and that the others claimed title to an undivided part of the premises by conveyance with notice of the defect in the title of the grantor, and without having paid a valuable consideration therefor; and that the defendants were colluding and combining, and had taken the necessary steps, to perfect their title under a judicial sale of the premises as the property of one of the original grantees, who was an infant, and thus place the property beyond the reach of creditors; *Held* that the jurisdiction of a court of equity to relieve against a fraud of this character was undoubted; and that the plaintiff might maintain an action to set aside the fraudulent conveyance made by L., as being an obstruction to the plaintiff's remedy for the collection of his debt.

This was an appeal by the defendants from an order made by Justice Pratt at a special term, overruling their demurrer to the complaint. The action was brought by a simple contract creditor of Eleazer Loomis, deceased, to set aside a certain conveyance of real estate made by the decedent in his lifetime, with intent to defraud creditors. The defendants demurred, assigning as a ground of demurrer that the complaint did not state facts sufficient to constitute a cause of action.

*L. R. Morgan,* for the appellants.

*Geo. F. Comstock,* for the respondent.

*By the Court,* W. F. Allen, J.  The defendants, not having objected to the want of parties, or to the form of the action that it is in behalf of the plaintiff alone and not in behalf of all

other creditors of Eleazer Loomis who should elect to come in and be made parties and contribute to the expense of the action, have waived the right to insist upon such objections; and for all the purposes of the demurrer, the complaint must be deemed unobjectionable by reason of any such defects. (*Code,* §§ 144, 148.)

The code (§ 145) provides that the demurrer shall distinctly specify the grounds of objection to the complaint, and that unless it do so it may be disregarded. Under this provision it seems to me that it is not in all cases sufficient to specify to which of the several classes of objections for which demurrers will lie the demurrer interposed is to be referred. There may be cases in which a defendant may not be able to point out in what the defect consists, without preparing the substance of a new complaint; or the case may be of that character that the complaint cannot, if the objection taken to it is valid, be made good; that is, one in which the objection that the complaint does not state facts sufficient to constitute a cause of action, goes to the ability of the plaintiff to maintain an action at all, and not to a formal defect, or the omission to state some fact which is necessary to complete the plaintiff's title to sue, and the omission to state which renders the pleading defective. In this case most of the objections pressed upon the argument were to the omission to allege certain facts necessary to give the plaintiff a right of action; as that he had proceeded to judgment upon his claim, and had exhausted his remedy at law, and other circumstances of a like character, and which we cannot say might not have been averred in an amended complaint, had the objection been specifically taken. There is a diversity of opinion among judges as to the form and sufficiency of demurrers, and the requirements of the code in this respect. (*See cases cited under* § 145 *of McCall's edition of the Code.*) And as I deem the case entirely free from doubt, upon the merits, I will not attempt to pass upon the sufficiency of the demurrer. The defendants by their demurrer admit that Eleazer Loomis, the deceased, became indebted to the plaintiff in a large amount of money, for which he gave his promissory note, which was not due at the time of his death; that he was the owner of a valuable real es-

Loomis *v.* Tifft.

tate, which in his lifetime, and after the accruing of the indebtedness of the plaintiff, he conveyed to third persons with intent to defraud his creditors and without any valuable consideration therefor; that before his death he parted with all his property, real and personal, and died insolvent; that no assets or property of any kind came to the hands of his administrators, and that no real estate descended to his heirs, and that he died intestate; that one of the defendants was one of the fraudulent grantees of the decedent, and that the others claim title to an undivided part of the premises by conveyance with notice of the defect in the title of the grantor, and without having paid a valuable consideration therefor; and that the defendants are now colluding and combining, and have taken the necessary steps, to perfect their title under a sale of the premises by order of a court of competent jurisdiction, as the property of one of the original grantees who is an infant, and thus effectually complete and perfect the fraud upon creditors and place the property entirely beyond the reach of those honestly entitled to it. So long as fraud constitutes one of the principal heads of equity jurisdiction, and is recognized and acknowledged as such, the bare statement of the case is an unanswerable argument in support of the plaintiff's right to maintain this action. The only way in which it can be repelled is by showing a perfect and safe remedy at law or in some other form; which cannot be done upon this statement of facts. There may be cases falling within the three heads of equity jurisdiction in which courts of equity cannot give relief; but these cases form exceptions to the general rule. Some of them are stated in *Story's Equity Jur.* § 64. The case is not within any of the exceptions with which I have met. As a general rule, courts of equity have jurisdiction to relieve against every species of fraud. (*Chesterfield* v. *Janssen,* 2 *Ves.* 155.) Judge Story says, "It must be a fundamental policy of all enlightened nations to protect and subserve the rights of creditors; and a great anxiety to afford full relief against fraud upon them has been manifested, not only in the civil law, but, from a very early period, in the common law also." (*Story's Eq. Jur.* § 350.) The principles of the common law have been carried out by our stat-

utes, which declare that every conveyance, &c. of any interest in lands, or in goods or things in action, made with the intent to hinder, delay or defraud creditors, or other persons, of their lawful suits, &c. as against the persons so hindered, delayed or defrauded, shall be void. (2 *R. S. 4th ed.* 319, § 1.) The jurisdiction of the court to relieve against fraud of the character of that detailed in the complaint and confessed by the demurrer, is undoubted. And it cannot be claimed that the death of the fraudulent debtor and grantor can defeat the honest creditor of his just rights as against the fraudulent grantee or his privies in fraud. The only question is whether the plaintiff is in a situation to enforce his claim to have the fraudulent deed judicially declared void and the property applied to the payment of his debt; whether he has done any thing to bar his right of action; or whether he has omitted to do any thing which he should have done prior to the commencement of the action.

1. It is not claimed that by any act of his own his right of action is defeated.

2. He could not have proceeded to judgment at law upon his claim against the debtor, in his lifetime, for the reason that the debt was not due at the time of the decease of the debtor.

3. An action against the administrator would have been a vain thing. *Lex neminem cogit ad vana seu inutilia.* The law will not enforce a man to do a thing which will be vain and fruitless. (*Co. Litt.* 197 *b.*) (1.) A judgment against the administrator could not have been collected, as there were no assets in his hands, and no goods, chattels or credits of which he could avail himself for the payment of debts. (2.) A judgment recovered against the administrator would not be evidence for any purpose against the defendants in this action. It would not be *prima facie* evidence of the plaintiff's debt, and after judgment against the administrators, as well as before, the action of the plaintiff would necessarily be upon the original debt and could not be based upon the judgment; neither could the costs of the judgment be recovered. (*Osgood* v. *Manhattan Co.*, 3 *Cowen*, 612.) Then why shall the plaintiff be compelled to do the vain thing of suing the administrators? The administrator

cannot impeach the transfer of his intestate except in the cases allowed by law. The administrator may now by statute in certain cases, representing creditors, and when necessary to provide a fund for the payment of debts, impeach a transfer of the goods and chattels of his intestate for fraud, which he could not do at common law. (*Babcock* v. *Booth*, 2 *Hill*, 181: *Osborne* v. *Moss*, 7 *John*. 161. *Brownell* v. *Curtiss*, 10 *Paige*, 210. 2 *R. S.* 4*th ed.* 691, § 17.) But no title to the real estate vests in administrators, and their duties in relation to the real estate of their intestate are conferred and regulated entirely by statute, and the duty or right to impeach the validity of a transfer of the real estate of the intestate is not conferred upon them.

4. Proceedings in behalf of the administrator to sell the real estate fraudulently conveyed by the intestate in his lifetime would be unavailing. The surrogate can only order the real estate of which the testator or intestate died seised, to be sold or leased for the payment of debts. This is quite evident from the whole tenor of the act. (2 *R. S.* 4*th ed.* 285 *et seq.*) It follows that an application by the creditor to compel the administrator to proceed to sell the real estate in question would have been entirely nugatory. But if the surrogate could direct the sale, and should do so, it would not advance the creditors in the collection of their debts. On the contrary it might tend to defeat them entirely. (1.) The property would not sell for its value, with the cloud created by the fraudulent deed resting upon it. (2.) The purchaser would be compelled to resort to the equitable powers of this court to avoid and set aside the fraudulent deed ; the surrogate's court not being vested with adequate powers to that end. There is no good reason, therefore, why the party if he could do so, should be compelled to go through the unnecessary and unavailing form of a sale by the administrator, under the order of the surrogate.

5. An action against the heirs would have been entirely nugatory. The averments of the complaint being taken to be true, as they must be under this demurrer, upon an issue of *riens per descent* the verdict and judgment must have been for the heirs. Heirs are only liable to creditors to the extent of the estate,

interest and right in the real estate which shall have descended
to them from the debtor. (2 *R. S. 4th ed.* 694, § 32. *Id.* 695,
§§ 45, 46.) Lands granted by the debtor in his lifetime by a
deed valid as against him, do not descend to his heirs at law,
notwithstanding the deed may be void as against creditors, for
fraud. The statute does not avoid the deed in favor of the heirs
of the grantor. *Manhattan Co.* v. *Osgood,* (15 *John.* 162,) was
a case peculiar in its circumstances, and the devisees who were
charged with the debts of the devisor were also the fraudulent
grantees. The judge at nisi prius charged the jury that the
lands were to be deemed, as regarded the plaintiffs, assets by
descent or devise, under the issue of *riens per descent* or devise
in the hands of the defendants who were parties to that issue.
And the court in bank, by Yates, J. say, " If then these convey-
ances were fraudulent and void the fee remained in Mrs. Osgood,
and as to her creditors it was the same as if she had never con-
veyed. The title to the estate must consequently be governed
by her last will and testament." The judgment in that case was
reversed by the court for the correction of errors, (3 *Cowen,*
612,) but this point was not considered. This case is not like
the one cited, in circumstances, and therefore it is unnecessary
to question the soundness of that part of the opinion of the su-
preme court quoted, and which was not considered by the court
of review. If the creditors could have no remedy by action or
suit in equity directly in their own name, the courts would do
well, in order to prevent a failure of justice, and the triumph of
fraud and covin, to make heirs and devisees the trustees of the
creditors and the administrator of the real estate of which their
intestate or testator died seised or to which the creditors were en-
titled, for the payment of their debts. But heirs and devisees, as
such, if they take at all, take in their own right, and are only made
liable because they take, and to the amount they take. There
is no law which confers title upon them for the benefit of others,
creditors or otherwise. This decision makes them take in order
to become liable to creditors ; and to what action the heirs would
resort to recover the land, after they should be charged as heirs,
to the extent of its value, I know not. As heirs they could not

Loomis *v.* Tifft.

recover; for a deed valid against their ancestor would be valid against them. But it is sufficient to say that if the remedy supposed by the supreme court to exist, in the case cited, does in fact exist, it cannot deprive the court of chancery of its original jurisdiction in cases of fraud, or take from the creditor the simple and certain remedy afforded by an action directly against the fraudulent grantee, to subject the property to the payment of the debts of the grantor, properly chargeable upon it. I may add that in *Manhattan Co.* v. *Osgood* the point was not taken, and of course not considered by the court, that if the deeds were fraudulent still the lands were not assets by descent or devise, in the hands of the defendant.

6. If it should be conceded that in ordinary cases an action of this kind would not lie at the suit of the creditor against the fraudulent grantee, the circumstances of this case would take it out of the general rule and give the court jurisdiction. The complaint alleges collusion and fraudulent combination on the part of the defendants to put the property, by means of a judicial sale, beyond the reach of creditors, and details circumstances and acts of the parties, showing manifestly that unless the equitable powers of the court are exerted for the protection of the creditors, the fraud will be consummated, and the property lost to those honestly entitled to it. (*See Story's Eq. Pl.* § 514; *Alsager* v. *Rowley,* 6 *Ves.* 748; *Doran* v. *Simpson,* 4 *Id.* 651.)

The reasons assigned by the justice for his judgment at special term are satisfactory, and need not be repeated. The fraudulent deed obstructs the remedy of the creditor. It meets him at the first step in his attempt to collect his debt, and he may at once resort to an action to remove that obstruction. (*Beck* v. *Burdett,* 1 *Paige,* 305.)

The judgment must be affirmed with costs.

[JEFFERSON GENERAL TERM, July 4, 1853. *Gridley, W. F. Allen, Hubbard* and *Pratt,* Justices.]