## SUPREME COURT.

BENJAMIN C. EVERINGHAM agt. EDWARD W. VANDERBILT and others.

*Action by creditor of a deceased debtor to recover for administration assets assigned by administrator without consideration.*

An action may be maintained by a creditor of a *deceased* judgment debtor against the administrator and his assignee to set aside an assignment made by such administrator of assets of the deceased debtor without consideration, and to have the same declared to be assets belonging to the estate, and to be applied to the payment of the debts of the intestate.

Ordinarily a creditor of the estate cannot maintain an action against a fraudulent vendee alone, or against him and the executor or administrator, to set aside a fraudulent transfer. But if the executor or administrator collude with the fraudulent vendee, or, after reasonable request, refuse to take proceedings to impeach his title, a creditor may maintain an action against him and the executor or administrator for the purpose.

In order to have satisfaction of his claim (in this case a judgment) out of these assets, and in order to compel their application, under the statute, to the payment of his demand, it is not necessary that the creditor should have exhausted his remedy at law by judgment and execution.

The plaintiff by commencing such action gets no preference over other creditors, and no priority in the payment of his claim.

*Special Term*, 1876.

*Dennis McMahon*, for plaintiff.

*R. H. Huntley*, for defendants.

VAN VORST, *J.* —Although the assignment of the seventeen leases by Gerrard W. Morris to James Humphrey, bearing date the 10th day of May, 1850, is by its terms absolute, and unaccompanied by any declaration in writing that the

assignee took, or was to hold the same in trust, yet there is evidence which clearly establishes that he received and held the same in trust only. He was not the owner so as to dispose of the leases or the rents to his own use, or on his own volition. It is quite clear that he, at least, held the leases as trustee for Buckley & Claflin; and there is evidence from which it may be reasonably concluded that Oliver Vanderbilt had some interest therein. The subsequent settlement made by and between Oliver Vanderbilt and the legal representatives of Buckley, after his death, can only be reconciled with the fact that Oliver Vanderbilt had some outstanding interest. The leases had passed from Vanderbilt to Morris by assignment, bearing date the 19th day of March, 1850, the transfer being made by Vanderbilt, when insolvent, in trust for the payment of his creditors. It does not appear that the trust created in Morris, under the assignment, was ever, in fact, closed.

But it does appear that Morris, within two months after the assignment to him by Vanderbilt, conveyed all the leases to Humphrey by the assignment first above mentioned. The evidence shows that Humphrey was at the time the attorney and counsel of Buckley & Claflin. They were judgment creditors of Oliver Vanderbilt. Humphrey's relation to the leases after the assignment was only nominal. The rents were not collected by him, but by Buckley, or Buckley & Claflin, creditors of Vanderbilt. In addition to the fact that Buckley & Claflin held judgments against Oliver Vanderbilt, there were litigations actually pending between them. After the death of Buckley, and in the year 1859, a settlement was negotiated by his legal representatives with Vanderbilt. By this settlement it was agreed that two of the leases should be assigned by Humphrey to the wife of Vanderbilt, and the remaining fifteen to the estate of Buckley. This settlement was consummated on the 11th day of November, 1859. What gives further countenance to the view that Oliver Vanderbilt, before the settlement, had a recognized interest in

the seventeen leases, is the fact that in that settlement there was exacted and received from him a deed confirming the assignment made of the same by Morris to Humphrey in May, 1850, so as to completely vest the legal title in him. Unless it was then understood that Vanderbilt had some outstanding claim, which it was important to extinguish, such deed was unnecessary.

The deed from Vanderbilt is dated the 11th day of November, 1859; and on the same day Humphrey conveyed to Catharine Ann Vanderbilt, the wife of Oliver, the two leases; which were afterward surrendered by him to the landlord, and two new leases taken out in his own name, which latter are the subject of this action. The claim of the defendant Edward W. Vanderbilt and the children of Mrs. Catharine Ann Vanderbilt is, that the leases so assigned to her became her property, and not the property of her husband; and that the new leases, although taken out by her husband in his own name in truth belonged to her.

The grounds upon which such claim rests, as I understand the evidence, are that Humphrey gave the leases to her, in consideration that she had released her inchoate right of dower in the Staten Island property. Now, it is quite clear that as Humphrey, in fact, had no interest in the leases, but only held them in trust, he could not give them away. No dower was released as a consideration for the assignment. Her right of dower in the Staten Island property had been extinguished many years before. The real consideration for the assignment of the two leases was the settlement of the controversies between Oliver Vanderbilt and the estate of Buckley, and the conveyance and release made by Oliver Vanderbilt on the 11th day of November, 1859. The consideration mentioned in the assignment of Humphrey to Mrs. Vanderbilt is $8,000. The executor of Buckley testified that such consideration proceeded from Oliver Vanderbilt by his executing and delivering to him a release of all claims he had to certain property in Staten Island. The consideration

mentioned in the release is the sum of $8,000; identical in amount with the consideration in the assignment executed by Humphrey to Catharine Ann Vanderbilt.

This release bears even date with the confirmatory deed from Oliver Vanderbilt to Humphrey and the assignment to Mrs. Vanderbilt, and was delivered at the time of the settlement. No money consideration was paid. Humphrey was ill at the time, and the settlement was made by Bryan H. Smith, the executor of Buckley, with Oliver Vanderbilt personally. As Vanderbilt declared himself to Bryan H. Smith as embarrassed at the time, this condition of his affairs may furnish a reason in itself for the assignment being made to the wife instead of the husband.

The evidence shows that the assignment to Mrs. Catharine Ann Vanderbilt was not recorded; and when the term limited by the leases was about to expire, and on the 30th day of June, 1855, Oliver Vanderbilt renewed the same *in his own name*.

During his lifetime he held the renewed leases; he himself collected the rents, and through agents appointed by him managed the property; he paid the taxes, and in his own name effected insurance; he only was personally known in the matter.

On the behalf of the defendants, the legal representatives of Mrs. Vanderbilt, deceased, and her children, and Edward W. Vanderbilt, the administrator, &c., of Oliver Vanderbilt, deceased, it is claimed that Oliver Vanderbilt performed these offices as agent for his wife, and that he paid the rents to her; that she requested him to record the assignment and attend to the renewal of the leases for her. But the conduct of Oliver Vanderbilt during his life is such as to indicate clearly that he did not recognize his wife as the owner of the leases, but that he regarded the property as his own. If it be true that he was requested to record the assignment it is also true that he did not do so. And when he came to renew he took the renewal, not to his wife, but to himself.

The renewal leases show that in June, 1865, Oliver Vanderbilt claimed to be the lawful owner and holder of the leases, and represented himself to the landlord to be entitled to a renewal of the same, for a further term of twenty-one years; and he personally assumed the covenants contained in the new leases.　The evidence is reasonably satisfactory that the whole consideration for the assignment from Humphrey of the former leases, proceeded from Oliver Vanderbilt, and that he was, as he evidently regarded himself, the owner of the same, notwithstanding the assignment to his wife of the original leases, on the 11th of November, 1859.　Oliver Vanderbilt died intestate on the —— day of October, 1868, holding, at the time of his death, the leases as legal owner. Subsequent to his death, the defendant Edward W. Vanderbilt, the administrator of the intestate, caused the assignment to Catharine Ann Vanderbilt, from Humphrey, of the former leases, to be recorded, and voluntarily assigned the renewal leases, of the 30th day of June, 1865, to his mother Catharine Ann Vanderbilt.

Upon a final accounting before the surrogate of Kings county, of his administration, it was substantially adjudged that the leases in question, of the new and further terms, were assets of Oliver Vanderbilt; and that Edward W. Vanderbilt, as administrator, be charged with the value of the same, upon the ground that he improperly assigned them to his mother.

The result reached by the surrogate has been affirmed, on appeal, by the general term of this court for the second department.　It is unnecessary to determine whether or not the decree of the surrogate is conclusive upon the parties as to the ownership of the leases.　As the evidence in the case, exclusive of the surrogate's decree, and to which brief reference has been made above, establishes satisfactorily that the leases in question were held and owned by Oliver Vanderbilt at the time of his death, in his own right, and were assets of his estate, and should have been inventoried as such; and

that the assignment and delivery of the same by the defendant Edward W. Vanderbilt, administrator, to Catharine Ann Vanderbilt, was without consideration, and was void.

The plaintiff is a judgment creditor of Oliver Vanderbilt. His claim arises under a judgment recovered in favor of Samuel Sherwood in the superior court on the 12th day of March, 1853, for $1,071.19, damages and costs. The plaintiff is the assignee of the judgment.

By the judgment record, in evidence, it appears that the indebtedness in favor of Sherwood had been chiefly contracted before the assignment made by Oliver Vanderbilt to Gerrard Morris in 1850.

The plaintiff demands as relief, among other things, that the assignment of the two leases by Edward W. Vanderbilt, as administrator of Oliver Vanderbilt, deceased, may be declared fraudulent and void as against the creditors of the estate of Oliver Vanderbilt, and that they may be declared assets belonging to the estate, and subject to the payment of the debts against the same; and that the assignment made by Edward W. Vanderbilt may be canceled of record.

The power of the surrogate was exhausted in that direction when he decreed the leases to be assets of the estate, and adjudged the administrator personally liable for their value. The leases having passed from the administrator to others by assignment, he could not adjudicate and compel a restoration of the property to the estate. Ordinarily, a creditor of the estate cannot maintain an action against a fraudulent vendee alone, or against him and the executor or administrator to set aside the fraudulent transfer, and have the property held under it administered as assets to pay debts. But if the executor or administrator collude with the fraudulent vendee, or, after reasonable request, refuse to take proceedings to impeach his title and reach the property in his hands, a creditor may maintain an action against him, and the executor or administrator, for that purpose (*Bate* agt. *Graham*, 11 *N. Y.* [1 *Ker.*], 237).

In the case from which the above principle is extracted the fraudulent transfer had been made by a deceased debtor in his lifetime. If in such case the creditor might maintain the action, much more could he do so when the transfer alleged to be void, and in fraud of the right of the creditors of the deceased debtor, was made by the executor or administrator after the death of the debtor. And the rule is, that when a devastavit has been worked by the personal representatives, a creditor may follow the property, if in existence, and have it impounded for the purpose of administration, as assets (*Story's Equity Jurisprudence*, secs. 579, 580, 581; *Holland* agt. *Pryor*, 7 *Mylne & Key.*, 240; *Ram. on Assets*, ch. 37, sec. 4, *pp.* 491, 492; *Long* agt. *Majestie*, 1 *John. Ch.*, 305; *McDowl* agt. *Charles*, 6 *John. Ch.*, 132).

The act of the administrator in assigning the leases in question to his mother was in itself wrongful, and to the prejudice of those interested in the estate he represented. Finding the two leases in question standing in the name of the intestate, it was clearly his duty to have inventoried them as assets, and to have applied them in the course of administration. He was not justified in making the transfer, by the assignment from Humphrey to Catharine Ann Vanderbilt, of the older leases, the terms under which had long since expired, and which leases had ceased to exist; and the renewed terms were in Oliver Vanderbilt, in his own right at the time of his death.

But it is objected on the part of the defendants that this action cannot be maintained by the plaintiff, because it is not proved that an execution upon the judgment against Oliver Vanderbilt has been issued and returned unsatisfied. That his remedy at law has not been fully exhausted.

Now the fact is, that an execution was actually issued upon the judgment, during the lifetime of Oliver Vanderbilt, and was returned unsatisfied.

But it is urged by the defendants' counsel that the execution was void and that the issuing and return of a void execu-

tion, can give the plaintiff no standing as a creditor asking relief in a court of equity.

In the view taken of this case, the right invoked, and the remedy sought, it is not necessary to determine whether the execution was valid.

The object of this action is not to obtain a specific satisfaction of the plaintiff's judgment, out of the assets in question to the exclusion of others legally entitled to the same. But it is substantially, that the property of the intestate, which should have been applied and administered to the payment of the creditors of the deceased may be recovered for that purpose.

Although the plaintiff describes himself in his complaint as a creditor by judgment and execution returned unsatisfied, yet this is not to be regarded strictly as a judgment creditor's action, nor as entitled to its specific relief. It does not seek to reach assets of the debtor, which he fraudulently disposed of during his lifetime, as was the case of *Bate* agt. *Graham* (*supra*), but to recover property of the intestate, wrongfully and illegally disposed of by the personal representative, after the decease.

The remedy sought is, that the assets may be reached and applied as the law provides for the distribution of the estate of an intestate, and without any preference in favor of the plaintiff over other creditors except such as the statute provides and directs in cases of intestacy. This action is not brought to reach equitable assets of a judgment debtor, upon which a judgment creditor, having exhausted his remedy at law, may acquire a prior lien by vigilance in commencing his action. The plaintiff can get no priority in the payment of his debt, by this action.

Nor in this view are the leases in question, strictly equitable assets. The statute directs them to be inventoried by the administrator, and to be by him applied first to the payment of debts in a certain order, and in the event of a surplus,

the same will go to those interested in the estate, as heirs of the deceased.

In order to have satisfaction of his judgment out of these assets, when administered through the surrogate's court, and in order to compel their application under the statute to the payment of his claim, it is not required that he should have exhausted at law his remedy by judgment and execution. If his claim was disputed by the administrator, and rejected, he would doubtless be required to establish it in the manner in which the statute prescribes in respect to disputed claims.

But as far as the plaintiff's claim is concerned, it is fully established in this action; there is no controversy about its goodness or validity.

There is no question about the rule in equity, that "when the attempt is to reach and enforce payment of the judgment out of the equitable interests of the judgment debtor, the creditor must have acquired an equitable lien in this way (that is by execution issued on the judgment returned unsatisfied), before chancery can or will entertain jurisdiction " (*Dunlevy* agt. *Talmage*, 32 N. Y., 459; WRIGHT, *J.*, *citing Beck* agt. *Burdett*, 1 *Paige*, 305). In this latter case the chancellor says: "The actual return of the execution unsatisfied, is necessary to give the court jurisdiction to decree satisfaction out of the equitable property of the defendant."

It is the filing of the bill in equity, after the return of the execution at law " which gives to the plaintiff a specific lien " (*R. S., vol.* 2, *pp.* 174, 175, §§ 43, 44).

But as no such relief is asked by the plaintiff in his complaint, the objection that no execution against the debtor in the judgment has been issued and returned unsatisfied, is not well founded.

The facts that the estate of Oliver Vanderbilt is insolvent; that the recovery of the assets in question is necessary for the payment of his debts; that the assignment of the leases in question was made voluntarily and without consideration, and was collusive, are sufficient to justify the intervention of a

court of equity to pronounce the assignment void, and to decree the restoration of the property for the purpose of being applied in the way the statute directs in cases of intestacy. In no other way can equity and justice be done.

By his omission to inventory the leases, and by his exhibit to the surrogate at the time of his appointment as administrator, that the personal estate of the intestate was of the value of $200 only, the security demanded and taken from the administrator was adjusted on that basis, and is in the penal sum of $400 only.

Such security is wholly inadequate to indemnify those interested in the estate. The case of *Innes* agt. *Lansing* (7 *Paige*, 583), would seem to justify this action.

That was the case of a limited partnership which had become insolvent. The property was regarded as a trust fund. The statute prescribes how the assets and property of a limited partnership should, in such cases, be distributed. A creditor, although he had not proceeded to judgment and execution, was authorized to maintain an action to have the funds distributed according to the statute.

Executors and administrators are regarded as trustees, and courts of equity will take cognizance of their doings in regard to the trust estate (*Cours* agt. *Port Henry Ins. Co.*, 12 *Barb.*, 28, 58; 3 *Black. Com.*, 437; *Willard Equity Jurisprudence*, 88, 490; *Libby* agt. *Christy*, 2 *Daly*, 418; *Shaw* agt. *Hoagland*, 39 *Illinois*, 264; *Loomis* agt. *Tafft*, 16 *Barb.*, 541; *Kidney* agt. *Cousmaker*, 12 *Vesey*, 152; *Walkinshaw* agt. *Petzel*, 4 *Robt.*, 426; *Barb. Chy. Prac.*, *Vol.* 2, 149).

The fact that Edward W. Vanderbilt, the administrator, acted under the advice of counsel, cannot make his transfer to his mother legal. As her son, he had a direct interest that she should get the property. The examination he made was partial and limited. There were sources of information which he did not investigate. From these he could have learned the truth. The leases in question are still in a condition in which they may be reached. No rights have been acquired

by the children of Catharine Ann Vanderbilt, by virtue of her will, which would prevent this court from declaring the assignment in question invalid, and adjudging the leases to be assets of Oilver Vanderbilt and subject to his debts.

The plaintiff is entitled to judgment that the said two leases be declared to be assets, subject to the payment of the debts of the intestate.

The conclusions of law, and the judgment will contain further directions to make this adjudication efficient to secure the care and disposition of this property, and the application of the proceeds thereof, to the creditors of the intestate and others interested therein, according to law.