PLATT, Assignee, etc., *v.* MEAD and others.

*(District Court, S. D. New York. July 18, 1881.)*

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—EXISTING AND SUBSEQUENT CREDITORS—PLEADING—PRIMA FACIE CASE.

An assignee in bankruptcy makes out a *prima facie* case for resorting to real estate, with the improvements that have been made thereon since its acquisition, to subject it to the payment of debts contracted subsequently to the time of its acquisition as well as before, by alleging the existence of the indebtedness; that the property was purchased by the bankrupt, and the consideration therefor was paid by him, but that the title was taken in the name of the wife; that a judgment had been recovered by the prior creditor, and an execution thereon had been returned unsatisfied; and that the bankrupt had conveyed the property with intent to defraud both prior and subsequent creditors, without consideration, to a grantee with knowledge acting in collusion with him.

2. PLEADING—INTENT TO DEFRAUD.

An averment of an intent to defraud is one of fact, not one of a conclusion of law.

In Bankruptcy. Demurrer to amended bill of complaint for want of equity.

*Nelson Smith*, for complainant.

*P. W. Ostrander* and *Wm. W. Ladd, Jr.*, for defendants.

BROWN, D. J. The plaintiff is assignee in bankruptcy of Abraham Mead, who was adjudicated a bankrupt, on petition of his creditors, on June 29, 1878. The assignee was chosen and the statutory assignment of the bankrupt's effects executed to him on September 6, 1878. On the twenty-fourth of August, 1880, this suit was brought for the purpose of reaching certain real estate, in this city, purchased by the bankrupt in 1867, with his own means, the title to which was taken in the name of his wife, the defendant Sarah J. Mead, together with the improvements afterwards made thereon by the bankrupt, and to subject the property to the payment of his debts then existing and subsequent.

The amended bill alleges that the bankrupt, in the early part of 1867, being a plumber and builder, contracted for the purchase, in his own name, of four lots of land on the north-east corner of Sixth avenue and Fifty-fifth street; that he paid $30,000 therefor, and caused the conveyance to be made from the seller to his wife, Sarah J. Mead, by deed dated and recorded May 22, 1867; that he was then "largely indebted and in embarrassed circumstances;" that one Littlefield then held a judgment against him recovered by default in the New York court of common pleas, and docketed June 18, 1866, for $3,183; that in August, 1866, on Mead's application, the default was opened, and he was allowed to come in and defend, the judgment meantime to stand as security for whatever might be recovered thereon; that final judgment was recovered in that action on April 29, 1875, for $5,118.28; that upon execution issued to the sheriff of the county the sum of $953.09 was made, and as to the balance the execution was returned unsatisfied on February 24, 1876, and that the residue of the judgment still remains unpaid; that the bankrupt purchased said lots for the purpose of erecting buildings thereon; that he shortly after entered into possession of them, and prior to September 1, 1873, and mainly in 1869, 1870, 1871, and 1872, erected five brown stone-front dwelling-houses thereon, in which he expended and invested upwards of $125,000; that he procured the title to be so conveyed to his wife, and paid the purchase price therefor, with intent to prevent the property from being subject to the lien of Littlefield's existing judgment, with intent to contract future debts and to defraud future creditors, and made the subsequent improvements and expenditures upon the property with the same intent; that while erecting the buildings, and after completing them, he gave out and caused it to be understood and believed generally that he was the owner thereof, and on completion he occupied a part of the premises,

and let and rented the rest, and collected the rents in his own name and appropriated the moneys to his own use; that he thereby acquired credit and standing in the community as a person entitled to credit, and upon such credit contracted divers large amounts of debts with intent to hinder, delay, and defraud his creditors, to-wit, some 10 persons especially named holding claims to upwards of $40,000 still unpaid, besides others not named; that his wife was privy to the designs alleged, and aided therein, and held the title in secret trust for her husband; that by deed dated June 22, 1875, and recorded June 24, 1875, said Abraham Mead and wife conveyed said premises to a relative, the defendant James C. Mead, a baker, of little or no property, carrying on a small business at Sing Sing, for the nominal consideration of $300,000, the estimated value of the property, subject to mortgages for $172,150 and taxes of 1874; that James C. Mead paid no consideration for such conveyance, and took the title in aid and furtherance of the fraudulent scheme of said Abraham Mead and Sarah Mead to hinder, delay, and defraud creditors, to cover the premises from them, and to complicate and embarrass them in obtaining payment of their debts out of the said premises; that said James never took actual possession, but that Abraham is still in possession, claiming that he collects the rents as agent of James.

The original bill did not state any facts in regard to Littlefield's existing debt, except the original judgment of 1866, nor specify any subsequent creditors or their claims. The demurrer to the original complaint was, therefore, sustained on the ground that the complaint did not disclose, as to Littlefield, any existing equity which the assignee could enforce, and as to subsequent creditors none were shown to have been defrauded where claims are still unpaid. These objections do not apply to the amended bill, which shows numerous subsequent creditors, alleged to have been thus defrauded, holding claims to upwards of $40,000 still unpaid, and that final judgment was not recovered in Littlefield's favor until April, 1875. From the opening of the default in August, 1866, until final judgment in 1875, Littlefield could neither issue execution nor file any bill in equity based on his first judgment by default. His equitable cause of action did not accrue until after the final judgment in 1875, and execution returned unsatisfied. He had six years from that date, but for proceedings in bankruptcy, in which to proceed against any equitable assets of his judgment debtor. N. Y. Code, §§ 382, 1871; *Eyre* v. *Beebe*, 28 How. (N. Y.) 333.

Upon the facts stated in the complaint, Littlefield, as a creditor existing at the time of the original purchase, could plainly have maintained an action for the relief here demanded.

The Revised Statutes of New York provide that where a conveyance is made to one person, and the consideration therefor is paid by another, no trust shall result in favor of the latter, (thereby abolishing the former rule in equity,) but that such conveyance shall be presumed to be fraudulent as against creditors, and that a trust shall result in favor of his then existing creditors, unless a fraudulent intent be disproved, to the extent necessary to satisfy their just demands. Rev. St. 728, §§ 51, 52. The latter clause is merely declaratory of the existing rule in equity. The trust in favor of existing creditors arises under this statute by presumption of law, in the absence of any proof as to the intention of the parties. And such a constructive trust, in the absence of any proof of the intent of the parties, arises only in favor of creditors then existing. *Underwood* v. *Sutcliff*, 77 N. Y. 58. The statute is silent as to the effect of such a transaction in cases where there is proof of an actual intent to defraud both existing and subsequent creditors. And if such an investment of a debtor's funds is part of a premeditated scheme to defraud both present and future creditors, such as is set forth in this bill, and through the debtor's ultimate insolvency they are thereby defrauded, I see nothing in this statute which would necessarily abolish the former remedy in equity allowed to subsequent creditors in such a case, and I am not aware that it has been so decided. The contrary has been adjudged by the supreme court of the state. *Mead* v. *Gregg*, 12 Barb. 653. In *Ocean Bank* v. *Hodges*, 9 Hun. 161, a fraudulent intent was not found, but the court say it did not exist.

That question, however, does not properly arise in this case. Littlefield was an existing creditor in 1867, at the time of the payment by Abraham Mead of $30,000 as the consideration of the conveyance to his wife. The recovery of final judgment in 1875, and return of execution unsatisfied, are the appropriate and conclusive legal proofs of the "necessity" of resorting to the constructive trust declared by the statute to arise in his favor from such a payment by his debtor. As this right of action is not yet barred by lapse of time, the plaintiff, as assignee and representative of creditors, is entitled to enforce the statutory trust for the payment of that debt and consequent relief of the estate in the assignee's hands. *In re Duncan*, 14 B. R. 32. No other allegations are necessary to make out a *prima facie* case, so far as respects this claim, than those of the existing indebtedness, the

payment of the consideration by Mead, the recovery of judgment, and return of execution unsatisfied.

It is urged on the part of the defendants that the assignee could not maintain such an action as the present upon the claim of Littlefield alone, or for the benefit of a single creditor, but only such actions as affect the whole body of creditors. Without considering the soundness of this objection as a general proposition, it is enough to say that a recovery in this action, even upon Littlefield's claim alone, would enure to the benefit of the whole body of creditors; for it would by so much relieve the other assets in the assignee's hands from Littlefield's share therein, and by so much increase the dividends to the general creditors. And the assignee has as plain a right to relieve his estate from what would otherwise be a charge upon it, by compelling the payment of a provable debt out of any independent fund which is equitably liable for its payment, as he has to collect in any claim to assets for a similar amount. The result to the general creditors is the same, and they are equally and alike interested in both. The assignee, in prosecuting this suit upon Littlefield's claim alone, would act, not for the sake of the benefit to Littlefield, but for the sake of and for the benefit of the creditors generally.

Similar relief, in cases of double bankruptcy, is granted to an assignee upon the same principle of relieving his estate from a charge equitably payable out of another fund, even though it sometimes accidentally results in giving a preference out of another estate to a creditor who, in his own right, had no claim to such a preference. *Ex parte Waring*, 19 Ves. 345; *Ex parte Ackroyd*, 3 De G., F. & J. 726; *Powles* v. *Hargraves*, 3 De G., M. & G. 430, 458; *In re Barnerd*, L. R. 19 Eq. Cas. 1, (10 Ch. App. 198;) *City Bank* v. *Luckie*, L. R. 5 Ch. App. 773.

As to the claims of subsequent creditors, it is objected that the assignee, although representing them, stands precisely in their shoes at the time of the bankruptcy, and can maintain no action based upon their claims which they themselves were not then in a situation to bring; and that as no judgment was ever recovered or execution issued upon their demands, no action based on these claims to reach the debtor's equitable assets can now be maintained by the assignee. This objection was considered and is fully answered in the case of *Southard* v. *Benner*, 72 N. Y. 424, where it was held that the assignee, without judgment or execution, may maintain any such suit in behalf of creditors to reach property fraudulently disposed of, as they

or any of them might, but for the bankruptcy, have thereafter acquired the right to bring.

After bankruptcy no further proceedings at law, such as recovery of judgment and return of execution unsatisfied, are, on principle, necessary to sustain an action to reach equitable assets, for there is no fund or property of the debtor which can, by any possibility, be made available upon execution. When all remedy at law is exhausted, the right to equitable relief arises. But by the assignment in bankruptcy all remedy of the creditor at law is *ipso facto* exhausted. All the debtor's property is thereupon vested by law in the assignee, and no subsequent judgment or execution can touch it. To procure judgment and execution to be returned thereon, even if not stayed by law, would be mere idle ceremonies. The situation is analogous to that of the estate of deceased persons, where the debtor's property is by law distributable to creditors *pro rata*, and not subject to any lien upon an after-acquired judgment. In such cases it has long been settled that a creditor at large may maintain a suit in equity to reach assets fraudulently disposed of by the deceased debtor without the ordinary prerequisites of judgment and execution returned unsatisfied, which in such cases would be wholly useless and unmeaning. Story, Eq. Pl. § 514; *Loomis* v. *Tifft*, 16 Barb. 541; *Alsager* v. *Rowley*, 6 Ves. 748; *Doran* v. *Simpson*, 4 Ves. 651. By section 5046 of the Revised Statutes, moreover, "all the property conveyed by the bankrupt in fraud of his creditors is vested in his assignee." This language is not to be limited to technical conveyances of real estate, but is, I think, intended to embrace every species of property or means of the debtor transferred or disposed of by him in any manner which by the law of the time and place of the transaction is fraudulent as to creditors. It includes moneys of the debtor paid for property conveyed to his wife by his procurement, or improvements made by him upon her lots, whenever either is in fraud of creditors. All such property thus vested in the assignee he must have the legal right to recover by any appropriate legal proceeding, so long as, and to the same extent to which, the creditors defrauded might, but for the bankruptcy, have entitled themselves to recover it. *In re Leland*, 10 Blatchf. 503, 507, 508.

Moreover, Littlefield could acquire no lien on the property in question until the filing of his bill in equity. *Clarke* v. *Rist*, 3 McLean, 494; *Storm* v. *Waddell*, 2 Sandf. Ch. 494; *Ocean Nat. Bank* v. *Olcutt*, 46 N. Y. 12.

Not having filed any such bill prior to the proceedings in bankruptcy, he would seem to be within the prohibition of section 5106, which prohibits suits thereafter against the bankrupt in law or *equity.* If so, then suit by the assignee for the same purpose must be allowed *ex necessitate* to prevent a failure of justice; for otherwise both assignee and creditor would be remediless. *Glenny* v. *Langdon,* 98 U. S. 20. Nor can it be supposed that the statutory period allowed for commencing actions for relief in such cases was intended, by the bankrupt act, to be suddenly cut off and all remedy thereafter precluded for the benefit of the bankrupt who had committed the fraud, or of his fraudulent grantee. If, therefore, upon the facts stated in the bill, the subsequent creditors would have been entitled to equitable relief after the recovery of judgment and return of execution unsatisfied upon their respective claims, I have no doubt that the plaintiff, as assignee in bankruptcy, is entitled to similar relief in this action without those prerequisites.

The other general averments in the bill seem to me to be sufficient upon demurrer to entitle both existing and subsequent creditors to relief. The conveyance to the wife of the lots contracted for by the husband, in his own name, for the purpose of building upon them; his payment of $30,000; the consideration of the conveyance when largely in debt and in embarrassed circumstances; his subsequent taking possession and building thereon during several years following, and his expending $125,000 or upwards in so doing; his representations during all this time that he was the owner, and contracting large debts, which are still unpaid, on the strength of the credit so acquired; and the subsequent conveyance of all this property, with more than $150,000 of the debtor's means thus expended upon it, to a relative in Sing Sing of little or no property, without consideration, followed by the apparent insolvency of both husband and wife,—are stated in the complaint as parts of one continuous transaction, and of a premeditated scheme to cheat and defraud creditors, both existing and subsequent.

Upon these facts, if proved without explanation, a court or jury would be warranted in finding, if not compelled to find, that such was the actual intent. And upon such a finding whatever doubt, if any, may exist as to the liability of the lots to subsequent creditors, to the extent of the original consideration paid therefor, under the New York statute, no doubt can exist as to their right to follow the

land to the extent of the large expenditures and improvements subsequently put upon it by the debtor.

The whole transaction, upon the facts stated in the bill, would be regarded as but one continuous scheme to defraud, and subsequent creditors would be equally entitled to relief. *Sedgwick* v. *Place*, 5 Ben. 184; S. C. 12 Blatchf. 163; *Kehr* v. *Smith*, 10 B. R. 49; *Shand* v. *Hanley*, 71 N. Y. 319; *Dewey* v. *Meyer*, 70 N. Y. 76; *Underwood* v. *Sutcliffe*, 77 N. Y. 58; *Burdick* v. *Gill*, 7 FED. REP. 668.

The averments in the bill of actual intent to defraud creditors as the *animus* of all these transactions are not, as counsel for defendants claim, averments of a mere conclusion of law, to be disregarded on demurrer, except as necessarily to be inferred from the other facts alleged. They are averments of an affirmative and essential fact. Upon this fact alone depends all the distinction between cases of actual and of constructive fraud which runs through all this branch of the law. Such an averment of actual fraudulent intent is to be passed upon as a fact; it may be directly testified to as a fact, (*Clarke* v. *Railroad Co.* 14 N. Y. 570,) and the demurrer must be held to admit it as a fact when pleaded, as in this case, as the motive of transactions which deprived creditors of a very considerable part, if not all, of their means of payment.

Averments of the insolvency of the debtor at every stage of such an alleged scheme to defraud are not necessary to be made or proved. The bill avers that the debtor began largely in debt and ended in insolvency. This is sufficient to cast upon the defendant the burden of proving any fact which may exist to justify, as against creditors, the gift and expenditure of over $150,000 upon his wife's property. *Pratt* v. *Curtis*, 6 B. R. 139, 144. Certainly the magnitude of these gifts affords no presumption that they were reasonable in amount or without hazard to creditors, and they must have contributed to, if they did not wholly cause, the debtor's ultimate insolvency. These large gifts and expenditures, through the methods stated in the complaint, are not necessarily incompatible with the debtor's large indebtedness, or even with his pecuniary embarrassment, as alleged in the bill; nor is the prior record of the deed to his wife any sufficient answer to the debtor's subsequent representations, coupled with his occupation and building upon the premises, that he was the owner thereof, upon the strength of which representations creditors trusted him and were defrauded. He might, notwithstanding the prior recorded deed to his wife, have been legal owner, by a subsequent

unrecorded deed from her, or equitable owner upon an agreement with his wife for building on the lots for his own benefit, either of which would not have been an uncommon circumstance.

The conveyance to James C. Meade, in 1875, is alleged to have been made after all the debts alleged in the complaint were incurred, without consideration, and with intent to complicate and embarrass still further any resort to this property by creditors; and it was received by him, as the bill states, in aid and furtherance of the fraudulent scheme therein previously set forth. Such a grantee manifestly acquires no equities and no new rights against prior creditors; and all these creditors were prior to that conveyance. He is not a *bona fide* purchaser or encumbrancer; and to such only do the cases cited by the defendant apply. The deed to him, therefore, constitutes no impediment to the plaintiff's recovery.

The demurrer must be overruled, with liberty to the defendants to answer within 20 days.